**FIRST NAT. BANK OF BOSTON et al. v. UNITED STATES.**

No. 5841.

District Court, D. Massachusetts.

Aug. 7, 1934.

George S. Fuller and Burnham, Bingham, Pillsbury, Dana & Gould, all of Boston, Mass., for plaintiffs.

Francis J. W. Ford, U. S. Atty., by J. Duke Smith, Sp. Asst. to U. S. Atty., both of Boston, Mass., Frank J. Wideman, Asst. Atty. Gen., and Andrew Sharpe and S. E. Blackham, Sp. Assts. to Atty. Gen., for the United States.

BREWSTER, District Judge.

This action is brought by trustees under a will to recover an additional income tax assessed for the year 1928. The additional assessment was due, in part, to the refusal of the Commissioner to allow, as a deduction from income, $8,752.86 paid by the trustees to the widow of the testator under certain provisions of the will. The differences respecting the rights to this deduction have been disposed of by the case of Helvering v. Butterworth, 290 U. S. 365, 54 S. Ct. 221, 78 L. Ed. 365. It is now conceded that the sum of $4,800 was properly disallowed and that the balance of $3,952.86 should have been deducted.

A controversy arises over the action of the Commissioner in transferring from capital net gain to ordinary income subject to normal and surtaxes the sum of $74,773.08. This sum represents the gain realized by the trustees from the sale in 1928 of certain securities which had been a part of the testator's property at the time of his death and which had been received by the trustees from the executrix within less than two years from the time of the sale in 1928.

In arriving at the amount of the profits arising from the sale, both the petitioners and the government have taken as a cost basis the market value on the dates when the securities were received by the trustees from the executrix. The testator, Edward E. Blodgett, died April 4, 1926, more than two years before the sale by the trustees. The pertinent sections of the Revenue Act of 1928 are as follows:

"Sec. 101. *Capital Net Gains and Losses*

"(a) *Tax in Case of Capital Net Gain.* In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title,

a tax determined as follows: a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain. * * *

"(c) *Definitions.* For the purposes of this title—

"(1) 'Capital gain' means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921. * * *

"(8) 'Capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. For the purposes of this definition— * * *.

"(B) In determining the period for which the taxpayer has held property however acquired there shall be included the period for which such property was held by any other person, if under the provisions of section 113 [section 2113], such property has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as it would have in the hands of such other person." 26 USCA § 2101 (a), (c) (1) (8) (B).

"Sec. 113. *Basis for Determining Gain or Loss*

"(a) *Property Acquired After February 28, 1913.* The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that— * * *

"(5) *Property transmitted at death.* If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. In the case of property transferred in trust to pay' the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death." 26 USCA § 2113 (a) (5).

The decisive question involved here is whether the securities sold by the trustees come within the definition of "capital assets" under section 101 (c) (8) as property held by the taxpayer for more than two years. It is the petitioners' contention that since property of a decedent which is received by a legatee or distributee is acquired by him at the date of his death (Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457), it follows that the property was held by the trustees for more than two years.

Under the earlier revenue acts, the Board of Tax Appeals and the courts had held that the provisions of law fixing the basis for determining gain or loss and those laying a tax on capital gains were quite independent of each other, with the result that the date of acquisition by the former owner was taken as a basis for arriving at the gain or loss, while the date of acquisition of the succeeding owner controlled his rights to the benefits of the capital gain sections of the law. Johnson v. Com'r of Internal Revenue (C. C. A.) 52 F.(2d) 726; Shoenberg v. Burnet, 60 App. D. C. 381, 55 F.(2d) 543.

A contrary rule was adopted in the Second Circuit in New York Trust Co. v. Com'r of Internal Revenue (C. C. A.) 68 F.(2d) 19, which case was affirmed by the Supreme Court in Helvering v. New York Trust Co., 54 S. Ct. 806, 810, 78 L. Ed. 1361. That case, which arose under the Revenue Act of 1921 (42 Stat. 227), involved property received as a gift by way of trust. The statute (section 202 (a) (2) definitely prescribed that the basis for determining gain or loss should be the same as that which it would have in the hands of the donor. It was there held that, although the donee had acquired the gift less than two years before the sale of the subject-matter of the gift, the gain could nevertheless be taxed under the capital gain provisions of the act. Section 206 (b).

In that case the court refers to the fact that the Commissioner had combined periods in which the shares were held by the trustor and the trustee respectively for the purpose of ascertaining the taxable gain but had as-

certained the applicable rate by breaking the continuity. It then said:

"Sections 202 (a) (2) and 206 (a) (6) are included in the same act and are applicable respectively to different elements of the same or like transactions and are not to be regarded as wholly unrelated. While undoubtedly legally possible and within the power of Congress, the methods adopted, and results attained by the Commissioner are so lacking in harmony as to suggest that the continuity required to be used to get the base was also intended for use in finding the rate. No valid ground has been suggested for requiring tenures to be added for the one purpose and forbidding combination for the other. The legislative purpose to be served by the application of the lower rate upon capital gains is directly opposed to the Commissioner's construction. There is no ground for discrimination such as that to which the trustee was subjected. It is to be inferred that Congress did not intend penalization of that sort."

By 1928 the revenue laws had undergone material modifications with respect to the basis for determining gain and loss, and the words "capital assets" had been more particularly defined. Under earlier acts, down to and including the Revenue Act of 1926, the basis for determining the gain or loss resulting from the sale of property acquired by bequest, devise, or inheritance, was the fair market value of the property at the time of such acquisition (Revenue Act of 1926, § 204 (a) (5), 26 USCA § 935 (a) (5), and under the rule laid down in Brewster v. Gage, supra, there can be no doubt that the time of acquisition was the date of the death of the testator. In 1928 the law was changed so that the basis for determining gain or loss arising from the sale of property transmitted at death, in cases such as the one with which we are here concerned, was the fair market value at the time of the distribution to the taxpayer. The petitioners and the respondent both concede that the gain was properly determined by using as the cost of the property the fair market value of the property at the time it was turned over to the trustees.

The provisions relative to net capital gains and losses also underwent changes. In the act of 1926 (section 208 (a) (8), 26 USCA § 939 note), for the first time, there appear provisions elaborating the definition of capital assets, and these elaborations were carried forward in the Revenue Act of 1928. It is said in Helvering v. New York Trust Co., supra, that these additional provisions were merely declaratory of the prior law, the purpose of which was to clarify what was doubtful as to existing law. But whether the law is old or new, the provisions of section 101 (c) (8) (B) govern the rights of the petitioners. There can be no room for misapprehension as to what the law was in 1928. In determining the two-year period, during which the taxpayer must hold property in order that it come within the definition of "capital assets," the period for which the property was held by any other person was to be included only if, under the provisions of section 113, the property, for the purpose of determining gain or loss from the sale, has the same basis in his hands as it would have in the hands of such other person. Section 113 is the section dealing with rules for determining gain or loss. Under the provisions of that section, the property sold by the petitioners did not have in their hands the same basis for determining gain or loss that it would have had in the hands of the executrix. If the executrix had sold the securities involved here, the cost would have been the fair market value at the time of death (Commissioner v. Stearns (C. C. A.) 65 F.(2d) 371), whereas by virtue of section 113 the cost was the fair market value at the time of the distribution. Clearly, therefore, the petitioners' case does not fall within the terms of section 101 (c) (8) (B).

The apparent purpose of the extended definition of capital assets was to avoid the unjust consequences which flowed from the earlier definition as the law was construed and applied by some of the appellate courts and the Internal Revenue Department. If the period of ownership of the next preceding owner was to be included for the purpose of ascertaining gain and loss, it was also to be added for the purpose of fixing the rate of the tax. In my opinion, Congress intended that the converse should be equally true. It would seem to follow, as a necessary corollary, that if the continuity of successive ownerships is to be broken for the one purpose, it is also to be broken for the other.

This conclusion would seem to be in complete harmony with Helvering v. New York Trust Company, supra, and recent decisions of the Board of Tax Appeals. Dibblee v. Com'r, 29 B. T. A. 1070; Nancy K. McFeely, 29 B. T. A. 998.

In order to reach the result, it has not been necessary to combine periods of ownership of two owners for one purpose and to break the continuity for another. The same date is resorted to both for the purpose of determining the gain and for determining the rate of the tax applicable to the gain.

So far as the petitioners' argument is predicated upon the decisions of the Board of Tax Appeals, and the uniform administrative construction of the capital gain section prior to the 1928 act, it has been much weakened by the observation of Mr. Justice Butler, in speaking for the court in Helvering v. New York Trust Co., supra.

In view of the government's concession that $3,952.86 was improperly disallowed, the petitioners are entitled to recover in these proceedings. I have no doubt the parties can agree as to the extent of the government's liability, if determined according to this opinion. If they cannot so agree, the case may stand for hearing as to the amount of the judgment.