## McFEELY v. COMMISSIONER OF INTERNAL REVENUE.*

No. 24. Argued October 24, 1935.—Decided November 11, 1935.

---

* Together with No. 110, *United States* v. *First National Bank of Boston et al.,* and No. 111, *Helvering, Commissioner of Internal Revenue,* v. *Lee,* certiorari to the Circuit Court of Appeals for the First Circuit; No. 439, *Rand* v. *Helvering, Commissioner of Internal Revenue,* certiorari to the Circuit Court of Appeals for the Eighth Circuit;

and No. 494, *Dibblee* v. *Commissioner of Internal Revenue*, certiorari to the Circuit Court of Appeals for the Ninth Circuit.

No. 137. *Ogle* v. *Helvering, Commissioner of Internal Revenue*. Certiorari to the Circuit Court of Appeals for the Second Circuit. Judgment reversed per stipulation of counsel to abide the decision in No. 439, *Rand* v. *Helvering, Commissioner of Internal Revenue, supra*.

104

*Mr. H. B. Wassell,* with whom *Mr. G. F. Snyder* was on the brief, for petitioner in No. 24.

*Assistant Attorney General Wideman,* with whom *Solicitor General Reed* and *Messrs. James W. Morris, John MacC. Hudson,* and *Lucius A. Buck* were on the briefs, for petitioners in Nos. 110 and 111, and respondent in Nos. 24, 439, and 494.

*Mr. Robert Driscoll,* with whom *Messrs. J. B. Faegre, Leland W. Scott, Hayner N. Larson, Albert J. Dibblee,* and *Clark R. Fletcher* were on the briefs, for petitioners in Nos. 439 and 494.

*Mr. George S. Fuller* for respondents in No. 110.

*Mr. Hugh W. McCulloch* for respondent in No. 111.

Mr. Justice Roberts delivered the opinion of the Court.

These cases were brought here on writs of certiorari to resolve a conflict between Circuits with respect to the application of § 101 of the Revenue Act of 1928,[1] which permits taxpayers, at their option, to pay at the rate of twelve and one-half per cent. on capital net gains. Subsection (c) (8), so far as material, is: "'Capital assets' means property held by the taxpayer for more than two years . . ." Whether property acquired from a decedent through intestacy, or a general bequest, is, within the meaning of the clause, held by the taxpayer from the date of the decedent's death or from the date of distribution, is the matter in dispute.

The taxpayers are: in Nos. 110, 111, and 494, residuary legatees, in No. 24 the donee of a widow who elected to take against her husband's will, and in No. 439 one of

---

[1] C. 852, 45 Stat. 791, 811.

those entitled under the intestate laws. In each case the taxpayer sold the asset more than two years after the death of the decedent from whom title was derived but less than two years after distribution by the estate's representatives. In each a return was made of the profit on the sale as capital net gain taxable at twelve and one-half per cent., but the Commissioner refused to recognize the correctness of the returns and calculated the tax at the normal and surtax rates payable on ordinary income.

The Board of Tax Appeals sustained the Commissioner in four of the cases.[2] In No. 110 the tax was paid and judgment recovered in a suit for refund.[3] The Circuit Courts of Appeals of the Third, Eighth, and Ninth Circuits affirmed the action of the Board; that of the First Circuit reversed the Board in No. 111 and affirmed the judgment of the District Court in No. 110.[4]

The Commissioner contends that until actual distribution property cannot be said to be held by one having an interest in a decedent's estate, and, even if this be not true, § 113 (a) (5), making value at the date of distribution the basis for calculating gain in such cases, requires that the word "held" in § 101 (a) (8) be construed to set the same date as the time at which the holding shall begin.

The taxpayers on the other hand assert that property is, in contemplation of law, held from the date of acquisition; and one deriving property from a decedent's estate through devise, bequest or intestacy acquires the property at the date of death and holds it from that date; that so all prior acts using similar phraseology have been interpreted by the Treasury; that the reënactment of these

---

[2] 29 B. T. A. 998; 29 B. T. A. 1070. Two of the Board's decisions are not reported.

[3] 7 F. Supp. 915.

[4] 74 F. (2d) 1017; 79 F. (2d) 24; 76 F. (2d) 200; 76 F. (2d) 203; 75 F. (2d) 617.

without significant change constitutes a legislative confirmation of the administrative interpretation; and that § 113, having to do with the basis for the calculation of the tax, cannot alter the plain meaning of § 101 which prescribes the length of time property must be held to constitute it a capital asset. We conclude that the date of the decedent's death is that from which the period of holding should be computed.

In the Revenue Act of 1921, the first which granted a special rate of tax on capital net gain, § 206 (a) (6) defined capital assets as " property acquired and held by the taxpayer . . . for more than two years." [5] From the corresponding sections of the Revenue Acts of 1924, 1926, and 1928, the word " acquired "was omitted. "Acquired " in the phrase " acquired and held " was mere surplusage and doubtless was elided from the later acts for that reason.[6] As indicated in *Helvering* v. *New York Trust Co.,* 292 U. S. 455, 469, the omission did not change the meaning of capital assets as defined in the earlier act.

In common understanding, to hold property is to own it. In order to own or hold one must acquire. The date of acquisition is, then, that from which to compute the duration of ownership or the length of holding. Whether under local law title to personal property passes from a decedent to the legatee or next of kin at death subject to a withholding of possession for purposes of administration,[7] or passes to the personal representative for the purposes of administration,—the title of the beneficiary, though derived through the executor relating back to the

[5] 42 Stat. 233.

[6] *First National Bank* v. *United States,* 76 F. (2d) 200, 202.

[7] The taxpayers in Nos. 24, 110, 111 and 439 contend that such is the law in Pennsylvania, Massachusetts, New Hampshire and Minnesota, where the devolutions in those cases respectively occurred. See *Roberts* v. *Messinger,* 134 Pa. 298, 309; 19 Atl. 625; *Lathrop* v. *Merrill,* 207 Mass. 6, 10; 92 N. E. 1019; *Carter* v. *Whitcomb,* 74

date of death,[8]—is for present purposes immaterial. In either case, the date of acquisition within the intent of the Revenue Act is the date of death.[9]

The Commissioner has heretofore administered the section upon this theory. As respects the Revenue Act of 1921, he so ruled in 1923,[10] and again in a very full memorandum in 1924.[11] It was stated in briefs and at the bar that these rulings have never been cancelled or revoked, and the statement was not challenged. The repetition of the definition without material change in the subsequent acts, including that of 1928, amounts to a confirmation of the administrative interpretation.[12] There is nothing in the section, its history, or the administrative practice, to enlarge or alter the connotation commonly ascribed to the word "held."

The Commissioner says, however, that Congress has undoubted power to set the date of distribution as the *terminus a quo,* and that an examination of the whole statute discloses that the purpose was to alter the preexisting rule to that end.

In support of this argument it is pointed out that § 113,

N. H. 482, 484; 69 Atl. 779; *Granger* v. *Harriman,* 89 Minn. 303; 94 N. W. 869. The opinion of the Circuit Court of Appeals in No. 494 discloses that the taxpayer asserted that the law of California was the same. The Court, however, did not discuss or decide the point, and we are referred to no pertinent authorities.

[8] See *Brewster* v. *Gage,* 280 U. S. 327, 334, and cases cited.

[9] *Brewster* v. *Gage, supra.* The question there decided arose under the Act of 1921 and was distinct from that now presented; but as concerns date of acquisition, which necessarily determines duration of holding, the decision is authority here.

[10] I. T. 1600, C. B. II–1, p. 36; I. T. 1719, C. B. II–2, p. 45.

[11] I. T. 1889, C. B. III–1, p. 70. He had made the same ruling under the Revenue Act of 1918: O. 1012, C. B. No. 2, January–June 1920, p. 34. And he so ruled in answer to an inquiry respecting the 1921 Act: Prentice Hall Tax Service, 1923, 2703–4.

[12] *Helvering* v. *Bliss,* 293 U. S. 144.

which prescribes the basis for determining capital gain or loss, radically altered preëxisting law on the subject in such a way as to show an intent to change the normal meaning of the word " held " in § 101 (c) (8). In the Revenue Acts of 1924 and 1926 the sections dealing with the basis for calculating capital gain or loss provided that in the case of property acquired by bequest, devise, or inheritance, the basis should be the fair market price or value of such property at the time of such acquisition.[13] As we have seen, in common understanding, with which the administrative interpretation was in accord, the time of acquisition in such cases is the time of the decedent's death. The date for ascertaining the basic value, and the date of commencement of the two year holding period were, therefore, under these Acts, identical. Committee Reports indicate that by reason of doubt as to what is in fact the moment of acquisition by persons having various relations to a decedent's estate, Congress resolved arbitrarily to fix the basis for the calculation of capital gain or loss.

In consequence the Act of 1928, for the language used in the earlier acts, substituted this:

" Property Transmitted at Death.—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer." § 113 (a) (5).

---

[13] R. A. 1924, § 204 (a) (5), 43 Stat. 258; R. A. 1926, § 204 (a) (5), 44 Stat. 14.

No change was made in the phraseology of § 101 (c) (8) from that used in prior acts defining capital assets as "property held by the taxpayer . . . for more than two years." The argument for the Commissioner is that the alteration of the basis date necessarily implies an intent to make a similar alteration in the origin date of the holding period. We think the argument cannot prevail. The Committee Reports disclose no purpose to alter the rule laid down in the earlier statutes and reënacted in § 101 (a) (8). Congress must be taken to have been familiar with the existing administrative interpretation. The fact that the two sections deal with the same general subject—capital gains—is cited in support of the Commissioner's position that they ought to be consistently applied. There is, however, nothing novel in the naming of arbitrary "basis" dates differing from the admitted dates of acquisition. The outstanding example is the use of March 1, 1913, value in certain cases for property theretofore acquired. Indeed, sub-paragraphs (A), (B), and (C) of § 101 (c) (8) fix arbitrary dates for calculation of the period of holding of capital assets, which differ from the time of actual acquisition, showing that Congress, had it desired to change the connotation of the word "held," as used in § 101 (c) (8), could readily have done so.

Counsel urge that *Helvering* v. *New York Trust Co.,* *supra,* requires us to construe § 101 (c) (8) as fixing the same date for the beginning of the holding period as § 113 (a) (5) sets for determining the basis. We think, however, that the case is not authority here. The Act of 1921 exhibited an inconsistency in that while a donee was not permitted to tack his tenure to that of his donor, he was required to use his donor's basis. This inconsistency flowed from a literal reading of the separate sections dealing with these two subjects. Such a result the court held would run counter to the very policy and purpose of

the capital gains rate reduction, which was to encourage sales of capital assets, and would penalize the taxpayer making such sales. The departure from the strict terms of the act was justified in order to secure him the benefit intended to be conferred. The court was careful to say " The rule that where a statute contains no ambiguity, it must be taken literally and given effect according to its language is a sound one . . ." That rule was held inapplicable for the reasons stated.

Here the rule obtains that a taxing statute, if of doubtful intent, should be construed favorably to the taxpayer.[14] To depart from the literal meaning of § 101 (c) (8) would be to penalize the taxpayer by lengthening the period during which the capital asset must be held in what is really a single ownership to obtain the advantage of the reduced tax. Under these circumstances we ought not to depart from the plain meaning of the section in an effort to bring about a uniformity which it is claimed Congress intended but failed to express.

The instant case is much closer to *Helvering* v. *Bliss,* 293 U. S. 144, where the Government asserted that a section in terms applicable to the taxpayer's right to make a deduction from gross income should be modified in meaning and effect by another dealing with a related topic,—related in the sense that both sections bore on the ultimate amount of the tax—independent, however, in the sense that one related to the deduction permitted in ascertaining taxable income, while the other fixed the rate of tax on a portion of such income. We refused to modify the obvious meaning of the applicable section to accord, as was claimed, with the other.[15]

[14] *Crooks* v. *Harrelson,* 282 U. S. 55, 61.

[15] Compare *Helvering* v. *Twin Bell Oil Syndicate,* 293 U. S. 312, where the taxpayer's plea for modification of the meaning of one section based upon the inconsistency with another was denied. In that case both sections had to do with depletion, the one with the calculation of the amount thereof, the other with the apportionment of depletion between the lessor and lessee.

A further argument of the Commissioner is that, since under § 101 (c) (8) (B) the period for which the taxpayer has held property, however acquired, is to include any period during which such property was held by any other person if, under § 113, the property has, for purposes of determining gain or loss, the same basis in the taxpayer's hands as it would have in the hands of such other person, it is impossible to construe § 101 independently of § 113. It is said that Congress has clearly indicated the successor in title should not have the benefit of his predecessor's tenure when he was not required to use the ·predecessor's basis, and, therefore, tenure and basis are so connected in the two sections that the one may not fairly be construed without reference to the other. The argument is not convincing.

The reference in sub-paragraph (B) is not to paragraph (a) (5) of § 113 but to the entire section, which embodies a number of instances of the arbitrary fixing of basis dates for ascertaining capital gain or loss. Sub-paragraph (B) has, on its face, no relevance to the facts in the cases here for decision.

We are of opinion that § 101 (c) (8) is clear on its face; that it deals solely with the tenure necessary to claim a rate of twelve and one-half per cent. on capital net gain as distinguished from the normal and surtax rate upon ordinary gain; that § 113 (a) (5) deals only with the basis for the calculation of the tax in cases falling under § 101 (c) (8); that the sections are not inconsistent and that each should be read as affecting the subject to which alone it applies.

*No. 24. Judgment reversed.*
*No. 110. Judgment affirmed.*
*No. 111. Judgment affirmed.*
*No. 439. Judgment reversed.*
*No. 494. Judgment reversed.*

MR. JUSTICE BRANDEIS, MR. JUSTICE STONE and MR. JUSTICE CARDOZO think that the judgment in each of these cases should go for the Government on the ground succinctly stated in the opinion of the Circuit Court of Appeals of the Second Circuit, in *Ogle* v. *Helvering,* 77 F. (2d) 338.