### EMPIRE TRUST CO. v. HOEY.

District Court, S. D. New York.

Feb. 20, 1937.

Hughes, Schurman & Dwight, of New York City (Francis C. Reed, of New York City, of counsel), for plaintiff.

Lamar Hardy, U. S. Atty., of New York City (William F. Young, of New York City, of counsel), for defendant.

COXE, District Judge.

This is a motion to dismiss a complaint for insufficiency.

The action is to recover $16,152.13 alleged to have been wrongfully collected as original issue taxes on Independence Fund Trust certificates issued during the period from June 21, 1932, to February 14, 1935; and the single question presented is whether these certificates are taxable as having a "par or face value," or as being "without par or face value."

The taxes were assessed under subdivision 2 of Schedule A, title 8, of the Revenue Act of 1926, as amended by section 722 of the Revenue Act of 1932 (47 Stats. 272), effective June 21, 1932 (26 U.S.C.A. §§ 900, 902 notes), reading as follows:

"2. *Capital stock (and similar interests), issue:* On each original issue, whether on organization or reorganization, of shares or certificates of stock, or of profits, or of interest in property or accumulations, by any corporation, or by any investment trust or similar organization (or by any person on behalf of such investment trust or similar organization) holding or dealing in any of the instruments mentioned or described in this subdivision or subdivision 1 (whether or not such investment trust or similar organization constitutes a corporation within the meaning of this Act), on each $100 of

par or face value or fraction thereof of the certificates issued by such corporation or by such investment trust or similar organization (or of the shares where no certificates were issued), 10 cents: Provided, That where such shares or certificates are issued without par or face value, the tax shall be 10 cents per share (corporate share, or investment trust or other organization share, as the case may be), unless the actual value is in excess of $100 per share, in which case the tax shall be 10 cents on each $100 of actual value or fraction thereof of such certificates (or of the shares where no certificates were issued), or unless the actual value is less than $100 per share, in which case the tax shall be 2 cents on each $20 of actual value, or fraction thereof, of such certificates (or of the shares where no certificates were issued)."

The Commissioner ruled on February 21, 1934, that the certificates were "taxable as certificates of no par value, and the issue tax should be computed at the rate of two cents on each $20.00 of actual value or fraction thereof of the certificates at the time of issue." The plaintiff paid taxes on that basis. Later, the ruling was changed, and on July 22, 1935, the taxes were reassessed on the theory that the certificates had a "par or face value," resulting in an additional assessment of $16,152.13, which the plaintiff paid on July 31, 1935, and application for refund was refused.

The certificates were issued under a trust indenture, dated July 1, 1931, of which the plaintiff is the trustee; they were put out under three optional plans, designated Plan A, Plan B, and the Fully Paid Plan; and in form they are mere agreements to make stipulated payments for investment in cumulative trust shares, which are the shares of an established fixed investment trust.

The cumulative trust shares represent undivided equitable interests in a group of listed common stocks deposited with a trustee under a separate trust indenture; they have been issued in blocks of 50,000 for each unit of stock so deposited, and are readily marketable; and their value necessarily changes from day to day as the market prices of the underlying securities fluctuate on the exchanges.

The Plan B certificate fully presents the question here for determination, rendering it unnecessary to consider the others. Under this certificate, the beneficiary agrees to make 120 regular monthly payments of $10 each, and the trustee agrees to purchase with such payments, after deducting service and maintenance charges, cumulative trust shares at the prices prevailing at the times the several payments are received, and to hold in trust the cumulative trust shares so purchased for the beneficiary. The beneficiary may at any time terminate the whole arrangement and obtain from the trustee the cumulative trust shares which have been so purchased for him, or the trustee will sell the cumulative trust shares for the beneficiary and turn the proceeds over to him. If the beneficiary makes all of the payments, he may similarly obtain the cumulative trust shares or their proceeds.

The body of the certificate as it appears at the time of issuance is as follows:

"In consideration of the undertaking and agreement of John Doe (hereinafter called the 'Beneficiary'), pursuant to the terms of an Indenture * * * to make one payment, the receipt of which is hereby acknowledged, or one hundred and twenty (120) equal monthly payments, the receipt of the first one of which totaling Ten Dollars ($10.00), is hereby acknowledged, the Empire Trust Company as Trustee, agrees to purchase with such payments, after making deductions therefrom for the service fee of the Company, maintenance allowance of the Trustee, * * * Cumulative Trust shares at the prevailing price thereof at the time of the receipt by the Trustee of each of such payments, to credit the amount thereof to the Beneficiary in the Beneficiary Account and to hold such Trust Shares in trust for the benefit of the Beneficiary, all pursuant to the terms, conditions and stipulations of the said Indenture and of this Certificate, which Indenture and which Certificate are made a part of this agreement as if fully set forth herein."

The plaintiff insists that the Commissioner's original ruling was correct. Under it, the tax is to be determined by the actual value of the certificate at the time of issuance; this, in turn, depends on the value of the cumulative trust shares purchased with the initial payment; and inasmuch as the actual value of the certificate is thus found to be less than $20, the tax on each certificate is 2 cents. The present position of the government is quite different. It now says that each

certificate has a face value of $1,200, which is arrived at by multiplying the number of payments by each installment payment. Under this theory, the tax on each certificate is $1.20.

Congress first undertook to tax original issues of stock in the Spanish War Revenue Act of 1898 (30 Stats. 451). No par stock was then unknown, and the tax was at the rate of 5 cents "on each hundred dollars of face value or fraction thereof" (30 Stats. 451, 458). This statute was repealed in 1902 (32 Stat. 96), but it was re-enacted in 1914 in substantially identical form (38 Stats. 753, 759).

In the meantime, New York had enacted the first no par stock legislation (Consol.Laws, c. 59, §§ 19–23, as added by N.Y.Laws 1912, c. 351); the purpose being to permit the issuance of stock which would "be accepted at its actual, rather than at any alleged, value appearing on its face." Commercial Credit Co. v. Tait (D.C.) 2 F.(2d) 862, 864, affirmed (C.C.A.) 7 F.(2d) 1022. The Treasury Department ruled, however, that no tax was payable on the original issue of such stock. And to remedy this defect, a proviso was added in the 1917 act (40 Stats. 319, 322), which was later modified and became subdivision 2 of Schedule A of the 1921 Act (42 Stat. 303), reading as follows:

"2. *Capital stock, issued:* On each original issue, whether on organization or reorganization, of certificates of stock, or of profits, or of interest in property or accumulations, by any corporation, on each $100 of face value or fraction thereof, 5 cents: Provided, That where a certificate is issued without face value, the tax shall be 5 cents per share, unless the actual value is in excess of $100 per share, in which case the tax shall be 5 cents on each $100 of actual value or fraction thereof, or unless the actual value is less than $100 per share, in which case the tax shall be 1 cent on each $20 of actual value, or fraction thereof."

The language of the subdivision remained substantially the same until 1932, when, by the enactment of section 722 of the 1932 Revenue Act, two changes were made, namely, (1) the term "face value" became "par or face value," and (2) the shares or certificates of investment trusts were expressly made taxable on their original issue. The first of these changes added nothing to the subdivision, as "face value" had always been understood to be synonymous with "par value," Goodyear Tire & Rubber Co. v. United States, 273 U.S. 100, 102, 47 S.Ct. 263, 71 L.Ed. 558; and the second change definitely brought shares or certificates of investment trusts within the provisions of the statute. Neither change has, however, any particular significance in so far as the question now under consideration is concerned.

From this history, it is clear that Congress intended to tax a share or certificate having a dollar or "alleged" value appearing on its face on the basis of that value, and a share or certificate without any such dollar value on the basis of its actual value.

■ The Independence Fund Trust certificate does not show on its face any dollar or "alleged" value; there is no representation or statement of any kind that it is worth or valued at any specific amount; and neither the trustee nor the issuing company undertakes to pay any fixed or definite sum at or prior to maturity. All that appears from the certificate itself is the agreement of the beneficiary to make specific periodic payments to the trustee, and of the trustee to use such payments concurrently with their receipt in the purchase of cumulative trust shares, and hold these shares in trust for the beneficiary. Moreover, the whole arrangement is subject to termination at any time at the beneficiary's option. I do not think, therefore, that the certificates may properly be classed as having a "par or face value."

■ I believe, also, that the Commissioner's original ruling with respect to these very certificates strongly supports the conclusion reached; it at least indicates that the later ruling is open to considerable doubt (Edwards v. Wabash R. Co. [C.C.A.] 264 F. 610, 618); and it is settled law that a doubt in the construction of a taxing statute should be resolved favorably to the taxpayer (McFeely v. Commissioner, 296 U.S. 102, 111, 56 S.Ct. 54, 58, 80 L.Ed. 83, 101 A.L.R. 304).

The government has cited in support of its contention Willcuts v. Investors' Syndicate (C.C.A.) 57 F.(2d) 811, certiorari denied 287 U.S. 618, 53 S.Ct. 18, 77 L.Ed. 537, and National Thrift Corporation v. Welch (D.C.) 56 F.(2d) 1077. In each of these cases, the corporation issuing the certificate was in the investment

banking business, and the investor agreed to make periodic payments over a stated period, the corporation undertaking to pay at maturity a definite fixed amount, which appeared on the face of the instrument itself. The cases are plainly distinguishable, as there is here no promise to pay any definite and fixed amount to the investor. Moreover, the tax in the two cases was based on the amount which the companies agreed to pay the investors, and not, as here, on the amount payable by the investor.

The motion of the defendant to dismiss the complaint for insufficiency is in all respects denied.