## Martin, Commissioner of Revenue, et al. v. F. H. Bee Shows, Inc.

(Decided Feb. 4, 1938.)

HUBERT MEREDITH, Attorney General, and JESSIE K. LEWIS, Assistant Attorney General, for appellants.

CHAS. N. HOBSON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The General Assembly of Kentucky at its third extraordinary session in 1936 enacted chapter 15 of the published acts of that session, and which became effective June 9, 1936. It is now sections 4281f-1 to and including section 4281f-22 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes. The purpose of the act was to levy an excise tax on the price of admissions to places of amusement and entertainment. The part of the act, naming the objects, fixing the rate of taxation and imposing the levy, is contained in four paragraphs of section 2 of the act, now section 4281f-2, as found in our published statutes supra. Those paragraphs will be designated by us as "(a)," "(b)," "(c)," and "(d)," although such designations do not appear in the act and we make them herein for convenience. As contained in the act they are:

(a) "If the admission charge is eleven cents (11c) to eighteen cents (18c) inclusive, the rate shall be one cent (1c); if the admission charge is nineteen cents (19c) to twenty-eight cents (28c) inclusive, the rate shall be two cents (2c); if the admission charge is twenty-nine cents (29c) to thirty-eight cents (38c) inclusive, the rate shall be three cents (3c); if the rate

is in excess of thirty-eight cents (38c) the rate shall be three cents (3c) plus one cent (1c) additional for each five cents (5c) or fractional part thereof. Provided that admission charges of less than eleven cents (11c) shall not be subject to tax hereunder."

(b) "In the case of places of amusement and/or entertainment at which food or drink is served and professional entertainers are employed, the charge for admission shall be deemed to be twenty-five per cent (25%) of the total charge made or the amount of the cover charge, if any, whichever is greater."

(c) "In the case of all amusements and/or entertainments, the charge for admission shall be deemed to be the total charge imposed and if there is a charge for seating, or for special facilities within the place of amusement and/or entertainment, the charge for admission shall be deemed to include both the charge for general admission and the charge for the special seating or other facilities provided in the places of amusement and/or entertainment."

(d) "Nothing in this Act shall be construed to impose a tax upon admissions to athletic contests, plays, and other forms of amusement and/or entertainment, at least seventy-five per cent (75%) of the gross proceeds of which admissions are to be used exclusively for charitable, religious, and/or educational purposes within this State."

The appellee and plaintiff below, the F. H. Bee Shows, Incorporated, is a corporation authorized to and engaged in conducting itinerant street carnival shows at various places throughout the country for periods of about one week at each place. It has an enclosed area of ground within which are located various contrivances for amusement and various independent tent shows for entertainment, as well as concessions for the sale of soft drinks and some edibles consisting mainly of popcorn and sandwiches and stands for other purposes. None of them, according to the pleadings and proof in this case, belonged to the F. H. Bee Shows, except an amusement contrivance within the enclosure called the "Loupa-Plane." The charge for entrance into the grounds is 10 cents per person, and no charge is made for patronizing any of the amusements within the

grounds or for admission into any of the tent shows therein, or for any drinks, or edibles sold therein exceeding 10 cents, except for the Loupa-Plane, for which a charge of 25 cents is made. The independent owners and operators of the various concessions within the carnival grounds pay to plaintiff, the F. H. Bee Shows, an agreed percentage of their receipts, but the amount taken in from the Loupa-Plane belongs entirely to plaintiff, and it has made report to the State Tax Commission of the amount derived therefrom ·and paid the tax thereon in accordance with the requirement of the statute.

Other portions of the statute look to its proper enforcement, among which is the requirement of monthly reports which, as applied to a carnival operated in the way and manner indicated, becomes considerably complicated if the Tax Commission's interpretation of the statute is correct, and to avoid that complication— and which the Tax Commission says was by agreement with a number of carnival companies other than plaintiff herein—it promulgated a rule or regulation by which a carnival company should pay as the approximate amount of the tax demanded 10 per cent. of its gross receipts from all sources. Pursuant thereto, it demanded of plaintiff for the month of May, 1937, $353.78—being 10 per cent of $3,537.80, the total amount of its receipts from all sources during that month. It protested that it owed no taxes, under a proper interpretation of the act, except the amount arising from the charge for patronizing its Loupa-Plane, and which it agreed to and did pay. The Tax Commission, however, insisted that a correct interpretation of paragraph (c), supra, of the statute entitled it to demand and collect from plaintiff upon a total admission fee made up of the 10 cents charged for admission into the grounds, plus the charge for patronizing any of the amusement contrivances, or any of the entertainment shows in separate tents, or any of the drinking or food stands located within the carnival grounds, and, when such additions are made, the admission charges would exceed 10 cents and become taxable under the act according to the amount thus produced.

On the other hand, plaintiff contended that, aside from the fact that it owned none of the independent

shows or amusement contrivances within its enclosure (except its Loupa-Plane upon which the tax was paid), and conceding that it owned all of them, it nevertheless was and is not liable for any of the tax demanded, since no charge or admission fee for any of them exceeded 10 cents, nor did its charge for entrance into the grounds exceed that amount. Therefore, since each charge or admission fee was "less than eleven (11 cents)," none of them was subject to the tax, and it disputed the interpretative right of adding any of the inside charges to the gate charge so as to increase the admission fee to an amount that would make it taxable under the act, as is contended for by the Tax Commission.

After the demand of it by the Tax Commission to pay the 10 per cent. assessment supra of $353.78, it paid that amount under written protest, and later filed this declaratory judgment action in the Franklin circuit court against the Tax Commission, its chairman and its members, seeking a judicial interpretation of the statute and a corresponding declaration of its rights thereunder, and for judgment declaring its right to recover the $353.78 paid by it under protest. Defendants' general demurrer filed to the petition was overruled by the court, and their answer set forth their interpretation of the act as outlined supra. They denied plaintiff's right to recover the $353.78 paid by it under protest, and also averred that the tax due from it under the statute—according to defendants' interpretation thereof—would amount to more than the protested payment. The answer admitted that the alleged regulatory rule made by defendants for the payment of 10 per cent. of the gross receipts taken in by carnivals similarly operated was not justified under the act, but that it was made, as above indicated, for convenience of all parties and with the consent of some of the owners of carnival companies operating in Kentucky. Following pleadings and motions made the issues, and the only evidence heard at the trial was an affidavit of F. H. Bee, Jr., the general manager of plaintiff, in which he substantiated the facts as hereinbefore recited, and it is not contradicted in the record.

The court, upon submission of the case as thus prepared and presented, adjudged that plaintiff was

not liable for any of the tax demanded of it, except that arising from the 25 cents charge paid by patrons of its Loupa-Plane, which had been paid. It therefore adjudged that the $353.78 paid by plaintiff to defendants, having been made under protest and to avoid the 100 per cent. penalty for failure to make it, was wrongfully demanded and then said: "That plaintiff has an apparent right to proceed for the recovery of same under the Admission Tax Act." This appeal is prosecuted by defendants from that judgment.

The question presented is one wherein there is an apparent dearth of precedent decisions on the direct point, and in determining it we must be largely guided by the general rules applicable to the interpretation of revenue producing legislation. Before addressing ourselves to a determination of the single question presented (which is one of interpretation only), we deem it appropriate to answer one argument made in brief of learned counsel for defendants to the effect that the statute under consideration is undisputably a revenue one, and that it is the duty of the courts to construe it so as to produce revenue instead of a contrary interpretation by which no revenue would be received, and which contention is, perhaps, correct and should be administered under facts calling for its application; but, as made here, it amounts to no more than a species of "begging the question," since the very point in dispute is, whether or not the statute, as drafted, embraces a carnival show—operated in the manner indicated—so as to make it a revenue-producing one under the admitted facts? We therefore conclude that learned counsels' argument cannot be made applicable to the instant situation.

Returning now to the task before us, we find the universally settled and prevailing rule to be that tax-levying statutes should not be extended by implication "beyond the clear import of the language used, nor to enlarge their operation so as to embrace matters not specifically pointed out." Also that: "In case of doubt they are construed most strongly against the government, and in favor of the citizen." Those excerpts are taken from the opinion of the Supreme Court of the United States in the case of Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211. See, also, the case of

Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156. In the still later case of McFeely v. Commissioner, 296 U. S. 102, 56 S. Ct. 54, 58, 80 L. Ed. 83, 101 A. L. R. 304, in announcing the same rule the same court said: "Here [in the Supreme Court] the rule obtains that a taxing statute, if of doubtful intent, should be construed favorably to the taxpayer."

That approved rule by the Supreme Court is in accord with all text-writers upon the subject, and likewise in harmony with state decisions. Illustrated supporting texts will be found in 25 R. C. L. p. 1092, sec. 307, and 59 C. J. pp. 1131, 1132, sec. 670. The first cited text says: "A tax can not be imposed without clear and express words for that purpose, and where there is any ambiguity or doubt, it must be resolved in favor of the person upon whom it is sought to impose the burden." The same interpretative rule is thus stated in the second cited one: "But, on the contrary, (revenue statutes) operate to impose burdens upon the public, or to restrict them in the enjoyment of their property and the pursuit of their occupations, and when they are ambiguous or doubtful will be construed strictly in favor of the tax payer and against the taxing power." However, both texts approve the equally universal rule that tax-levying statutes should receive a reasonable interpretation with a view to carrying out their purpose and intent; but which latter rule applies only in the absence of a beclouding and confusing ambiguity.

The general rule under consideration—of resolving doubtful language in such statutes in favor of the taxpayer—was approved by us in the case of City of Maysville v. Maysville Street Railway & Transit Company, 128 Ky. 673, 108 S. W. 960, 962, 32 Ky. Law Rep. 1366, wherein we said: "It is elementary that taxing laws will not be enlarged by intendment, and no property will be held as embraced within the terms of a taxing statute by mere implication. To impose taxes on property requires a clear and explicit command of the sovereign power; and the courts will never strain a taxing statute in order to make it embrace property which would otherwise not fall within its purview." The principle was also approved in the later case of Commonwealth v. Southern Railway Company, 193 Ky. 474, 237

S. W. 11. It is clear that the two rules referred to—i. e., strict interpretation of tax levying statutes in favor of the taxpayer, and the one requiring their reasonable interpretation so as to carry out the purpose and intent of their enactment—do not conflict, where the language employed is so ambiguous and doubtful as to require the resolving of the doubt against the government.

Having thus ascertained our guiding principle of law in the performance of the task submitted to us by the appeal, we will now attempt to apply it to the language of the statute under consideration—keeping in mind that no tax or charge is to be made where the admission fee is less than 11 cents, and that the statute says in its seventeenth section (4281f-17 of our present Statutes) that: "It is the intent and purpose of this Act to impose the tax levied herein once only upon the sales of the same services made taxable hereunder." Some arguments and discussions are made in brief concerning the applicability to the facts of paragraphs (b) and (d), supra, of section 4281f-2 of our present Statutes, being section 2 of the act in question. But we are not inclined to attach any importance to those arguments, since we are unable to see their relevancy or to conclude that either of them have any bearing upon the liability of plaintiff for the tax imposed and which, we conclude, is so clear that we will at once put aside those paragraphs as being irrelevant.

The only paragraph—as well as the chief and practically exclusive one—under which defendants claim the right to assess and collect the imposed tax from plaintiff, is paragraph (c) of the statutes, supra. It, as will be seen, authorizes the augmentation of the amount charged for the original gate entrance fee by the amount that is later charged "for seating or for special facilities within the place of amusement." Clearly none of the fees or charges for entrance to any of the amusements or entertainments located within the carnival enclosure are demanded of, or involuntarily imposed upon the patron after he gains entrance into the grounds. On the contrary, he can "take them or let them alone," according to his own volition after he. gets in. They are not charges that are arranged for or which are necessary for his comfort, such as appro-

priately arranged seats, or to furnish him a more advantageous view for his external survey of what the grounds contain. Free entrances into or appropriation of any of them are not demandable by him as a part of the privilege he obtained by paying the entrance fee into the ground. By paying that fee he is given the privilege only of roaming around over the grounds and viewing whatever he may see in there, but only externally as an onlooker. In order to appropriate any of the amusements or to witness any of the separately enclosed entertainments furnished by any of the collected shows therein contained, he must make further demands upon his exchequer, but only in the diminutive sum of not exceeding 10 cents, unless he desires to patronize the Loupa-Plane, which is 2½ times that much. Clearly, no augmenting charge collected in any manner from the patron after he gets into the ground is made for the purpose of furnishing him a better seat after he gets in there, since there are no seats in the entire grounds for any patron who enters therein.

The only other language, therefore, to be found in the statutes supporting the interpretation of defendants is the phrase ''for special facilities within the place of amusement.'' We have seen that the entrance charge into the grounds pays for every facility that the patron obtains for making it, i. e., the right to see and view the collected crowd and to witness the operation of any of the amusement contrivances therein contained. But, if he wishes to participate in any of them or to enter into any of the other enclosed shows therein contained, he must pay the price therefor, which we have seen is only 10 cents. Therefore, the 10-cent entrance charge into the grounds only admits the patron into the space wherein there is a collection of independent shows and entertainments, which he may or may not patronize —as he may choose—and which he knew he could not do without paying the charges therefor when he paid his admittance fee into the grounds. Under the undisputed manner of conducting the carnival as so outlined, none of the things within the grounds, for which additional charges are made, could be regarded as ''facilities within the place of amusement'' as contemplated by the statute. The word ''facilities'' as employed in the statute clearly refers to some personal accommodations

furnished for the comfort of the patron to enable him to obtain a better view of what he paid for when he entered the grounds, or to more conveniently do so. We do not interpret it as comprehending the mere furnishing of an opportunity to the patron to avail himself of any of the shows or amusements located within the grounds, but which interpretation is required if defendants' contention should be sustained.

Two pertinent observations founded on the facts strongly sustain the interpretation of the statute that we have adopted herein. One of them is that the tax due upon the charge for patronizing the Loupa-Plane did not take into consideration the admission charge at the gate into the ground; and the other one is that to construe the statute as contended for by defendants would produce interminable confusion and utter impracticability. To illustrate: A pays his 10-cent entrance fee into the ground. While in there he patronizes one of the shows or amusements located therein, for which he pays 10 cents, which, with his gate entrance fee, makes 20 cents, upon which 2 cents tax would be due. Later he expends another 10 cents for the same purpose. It, standing alone, would not be taxable under the statute, but, when augmented by the amount of the gate fee, there would be a second tax of 2 cents, for the amount he had expended the second time, and in which the gate fee would figure twice—thus imposing a tax on it more than once, contrary to the provisions of section 17 supra of the act, now section 4281f-17 of our published statutes. Again, the only feasible and at all practical way to ascertain the number of patrons to any of the entertainments within the ground is to take the entire gross receipts for the particular show or entertainment and divide it by the charge made, which will obtain the number of patrons of that show or entertainment; but it is impossible to determine whether any of those patrons also patronized other entertainments in the ground, which, if they did, and a charge would be made for each entrance into any show, the tax on the gate receipts of 10 cents would be multiplied by the number of entertainments that the same person entering the grounds saw proper to patronize. Surely it was never the intention of the Legislature to put forth a law breeding such confusion and impracticability.

However, if the interpretation of the statute, as so made by us, were less plain, then its applicable language is undoubtedly sufficiently ambiguous as to create a murky doubt concerning the purpose and intent of the Legislature in appropriating it, and, under the rule supra, the taxpayer should be given the benefit of 'that doubt. We are aware that the adjudged interpretation by the learned trial judge—and which we have indicated meets our approval—has the effect to relieve plaintiff from the payment of any tax, except upon receipts from its Loupa-Plane, but the responsibility for such a consequence should be borne, not by the courts, but by the draftsman of the statute as enacted. The method of conducting a carnival, as hereinbefore outlined, so differentiates that business and species of attraction as to, no doubt, justify the right of the Legislature to classify them for the purposes of excise taxation without violating any constitutional principle, and which could have been done in the statute under consideration if the Legislature had seen proper to do so. But, not having done so, the attempt to reach them, and to make them liable for the taxes demanded of them under the act as passed, is without authority or support, and the trial court did not err in so declaring. Since our interpretation would apply, regardless of who owned or operated the entertainments or shows within the grounds, we will not attempt to discuss what effect, if any, that fact would have upon plaintiff's liability where they are conducted and operated by others, in the proceeds of which plaintiff has no other interest except its concession charges.

Wherefore, for the reasons stated, the judgment is affirmed; the whole court sitting.