HARVEY S. STRASSBURGER, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82562. Promulgated May 17, 1938.

*Albert L. Cuff*, *Esq.*, for the petitioner.
*Chester A. Gwinn*, *Esq.*, and *Charles E. Lowery*, *Esq.*, for the respondent.

OPINION.

TURNER: The parties agree that the trust organized on September 1, 1928, and designated herein as the "Manager's Association of Blaw-Knox Company" was an "Employees' Trust" as contemplated by section 165 of the Revenue Act of 1928.[1] Under that provision of the statute the association was not taxable as a trust, but the amount contributed to the fund by the employer and all earnings of the fund were to be taxable to the distributee in the year in which distributed or made available to him. Petitioner invested $10,000 in the trust on June 15, 1930, and upon the termination thereof on September 26, 1931, received as his proportionate share of the trust assets the sum of $191.98 in cash and 307 shares of the capital stock of the Blaw-Knox Co., which on that date had a fair market value of $3,223.50.

In June 1933, more than two years after petitioner's investment in the trust but less than two years after his actual receipt of the 307 shares of capital stock of Blaw-Knox Co. from the trust, petitioner sold 300 shares of the stock for $4,663.50. Petitioner claims that he sustained a capital loss amounting to $4;920.90 within the meaning of section 101 of the Revenue Act of 1932[2] upon the sale

---

[1] SEC. 165. EMPLOYEES' TRUSTS.

A trust created by an employer as a part of a stock bonus, pension, or profit-sharing plan for the exclusive benefit of some or all of his employees, to which contributions are made by such employer, or employees, or both, for the purpose of distributing to such employees the earnings and principal of the fund accumulated by the trust in accordance with such plan, shall not be taxable under section 161, but the amount contributed to such fund by the employer and all earnings of such fund shall be taxed to the distributee in the year in which distributed or made available to him. Such distributees shall for the purpose of the normal tax be allowed as credits against net income such part of the amounts so distributed or made available as represents the items of dividends and interest specified in section 25 (a) and (b).

[2] SEC. 101. CAPITAL NET GAINS AND LOSSES.

*   *   *   *   *   *   *

(b) TAX IN CASE OF CAPITAL NET LOSS.—In the case of any taxpayer, other than a corporation, who for any taxable year sustains a capital net loss (as hereinafter defined in this section), there shall be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the ordinary net income at the rate and in the manner as if this section had not been enacted, and the total tax shall be this amount minus 12½ per centum of the capital net loss; but in no case shall the tax of a taxpayer who has sustained a capital net loss be less than the tax computed without regard to the provisions of this section.

(c) DEFINITIONS.—For the purposes of this title—

*   *   *   *   *   *   *

of the said 300 shares. The respondent concedes the amount and year of the loss as contended for by petitioner, but claims that the loss was an ordinary loss, subject, for deduction purposes, to the limitations prescribed by section 23 (r) (1) of the act.[3] According to both parties the basis for the 307 shares of the Blaw-Knox Co. stock in the hands of the petitioner was $10,000, the amount of petitioner's investment in the trust, less $191.98, the amount of cash received by him upon the termination of the trust, their only point of difference being as to the date on which the stock was acquired.

We have previously held, in *Oscar L. Olstad*, 32 B. T. A. 670 (petition for review dismissed by the Circuit Court of Appeals for the Second Circuit without written opinion), in the case of another employee of the Blaw-Knox Co. and an investor in the above trust, that the employee realized no taxable gain upon the termination of the trust and the distribution of its assets in 1931 where the cash plus the fair market value of the stock received by such employee was less than the amount of his original investment. In the stipulation and on brief, the respondent has accepted the ruling in that case as sound. We have not had before us in any prior case the question as to whether or not an employee, on such facts as those stated, sustained a deductible loss in the year in which the trust was terminated and, so far as we have been able to determine, that question has not been decided by any of the courts. If the petitioner sustained a loss in respect of his investment in the trust in the year of the trust's termination, obviously the correct basis for determining gain or loss upon the subsequent sale of the stock received is not the basis used by the parties herein, but is the basis so used adjusted to take the loss previously sustained into account, and, under such cir-

---

(2) "Capital loss" means deductible loss resulting from the sale or exchange of capital assets.

* * * * * * *

(8) "Capital assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. For the purposes of this definition—* * *.

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

* * * * * * *

(e) LOSSES BY INDIVIDUALS.—Subject to the limitations provided in subsection (r) of this section, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

* * * * * * *

(2) If incurred in any transaction entered into for profit, though not connected with the trade or business : * * *

* * * * * * *

(r) LIMITATION ON STOCK LOSSES.—

(1) Losses from sales or exchanges of stocks and bonds (as defined in subsection (t) of this section) which are not capital assets (as defined in section 101) shall be allowed only to the extent of the gains from such sales or exchanges (including gains which may be derived by a taxpayer from the retirement of his own obligations).

cumstances, it is apparent that the petitioner did not have a loss upon the sale of the stock in the taxable year 1933. Inasmuch, however, as both parties have presented the instant case under the theory that the loss on the sale of the stock was sustained in 1933, and not in the year in which the trust was terminated, and, further, in view of the fact that the respondent must be sustained in his determination of the deficiency herein if petitioner did not sustain a capital loss, a finding that the shares of stock, when sold, were not capital assets will completely dispose of this case and thereby make it unnecessary to consider and determine whether or not the theory of the parties as to the year in which the loss was sustained is erroneous or correct.

Petitioner admits that he did not acquire a legal interest in the trust assets at the time of his investment in the trust, but contends that he acquired an "equitable interest in trust assets to an extent that would entitle him to compute his holdings as from the date investment was made." Respondent argues that petitioner did not "acquire" the shares of stock until they were actually distributed to him by the trust and that they were therefore not "held" by him prior to that date.

We conclude that the date of the distribution by the trust is the date from which the period of holding should be computed. No other conclusion appears reasonable after examining the terms and conditions of the trust agreement. Paragraph 5 (a) of the agreement states that "the Trustee now holds" 72,133 shares of the capital stock of Blaw-Knox Co., and subparagraph (b) provides that "shares now held by the trustee, as well as any securities that may hereafter be purchased for the association shall be issued in his name as Trustee" of the association. The trustee had the right at any time, in his sole discretion, to exchange or sell and liquidate any investment of the association, including shares of stock of the Blaw-Knox Co. or any other corporate investment. Upon the final termination of the association each member was to receive his proportionate part of the assets of the association which were to be distributed by the trustee "in the discretion of the trustee in either securities or cash, or both." If any member left the employment of the company prior to the termination of the association, for any reason other than death, incapacity, or illness, he forfeited his right to any profits accrued on the assets of the association and was "entitled to receive only the amount of cash actually paid into the association by him without profit and without interest." In case of death, incapacity, or illness which would render the member unable to hold a remunerative position with the company, his interest in the association ceased and was to be determined as of the effective date of his death, incapacity, or

illness and he or his estate was to be paid "in cash" the value of his interest on that date. The right was reserved "to change or amend all or any part of this agreement upon the joint affirmative vote of the Trustee, a majority of the advisory board and a majority of the members."

We think the above provisions of the trust agreement conclusively show that the petitioner did not "acquire" nor become the "owner" of any shares of Blaw-Knox Co. at the time of his investment in the association. Title did not pass until the stock was distributed to petitioner by the trustee and the period of holding begins at the time he acquired title. *Arthur E. Otto*, 37 B. T. A. 479. Prior to termination of the trust it was not known that he would ever acquire shares of stock in Blaw-Knox Co. Prior to that time he had only the right to certain cash payments in the event of his withdrawal and a right to a proportionate share of the assets of the trust in the event of its termination, in which case the distribution might have been "in either securities or cash, or both." Cf. *Du Bois Young*, 34 B. T. A. 648.

It is of some significance that section 165, *supra*, provides that the amount contributed to such fund by the employer and all earnings of such fund "shall be taxed to the distributee in the year in which distributed or made available to him." Thus, for the purpose of taxation, the statute does not recognize ownership in the members of such a trust until the shares of stock or other assets are actually delivered to them. See *Schaefer* v. *Bowers*, 50 Fed. (2d) 689.

With respect to the meaning of the term "held" as used in the statute, the Supreme Court said in *McFeely* v. *Commissioner*, 296 U. S. 104, that "In common understanding to hold property is to own it. In order to hold or own one must acquire. The date of acquisition is then, that from which to compute the duration of ownership or length of holding." We are of the opinion that petitioner did not acquire the shares of stock of Blaw-Knox Co. until they were distributed to him by the trustee on September 26, 1931, and since the duration of his ownership must be computed from that date, he had not "held" the shares of stock for more than two years when they were sold in June 1933. We therefore hold that the stock in question was not a capital asset and the petitioner did not sustain a capital loss upon the sale thereof.

*Decision will be entered for the respondent.*