OPINION. Smith, Judge-. The only question presented by these proceedings is whether the profit, the amount of which is not in dispute, realized by the petitioners from sales of their shares of stock of Campbell Transportation Co. in 1941 was a long term capital gain (from the sale of capital assets held for a period of 18 months but less than 24 months) or was a short term capital gain as contended by the respondent. No question is raised but that the holding period of the petitioners dates from the time when shares of stock were acquired by Earl F. Reed and his associates. The respondent contends, however, that in no event did the holding period start prior to March 28,1940, when they paid for their shares, and further contends that the shares were sold on July 31, 1941, when the Interstate Commerce Commission approved the purchase by the Mississippi Co. of the shares. These cases are companion cases to that of Albert E. Dyke, 6 T. C. 1134, one of the stockholders who sold his shares of stock in Campbell Transportation Co. under the same agreement of March 10, 1941. It was stipulated in that proceeding that Dyke acquired his shares on March 6, 1940. We found upon the evidence in that case, which was also made evidence in these proceedings, that the selling date was September 10, 1941, and not July 31, 1941, as contended by the respondent. We therefore hold in these proceedings that the selling date of the shares was September 10, 1941. An important question for consideration is whether the petitioners or their predecessors in interest acquired their shares of stock on March 6, 1940, as contended by them. They submit that Reed, speaking for them, had an agreement with Campbell under which he was to acquire for himself and his associates shares of stock of the Campbell Transportation Co. which were to be acquired from John W. Hubbard. They furthermore point out that, pursuant to this agreement, a settlement was made with Campbell on March 28, 1940, for the shares and that they paid interest on their purchases from March 6 to March 28. They therefore submit that they were the owners of the shares within the contemplation of the statute from March 6, 1940. In section 117 (a) (1) of the Internal Kevenue Code the term “capital assets” is defined as meaning “property held by the taxpayer.” It was held in McFeely v. Commissioner, 296 U. S. 102, that the term “held” means the same as “acquired and held” which was the language used in the Revenue Acts of 1921, 1926, and 1928. The Court further observed: In common understanding to hold property is to own it. In order to own or hold one must acquire. The date of acquisition is, then, that from which to compute the duration of ownership or the length of holding. * * * The evidence in this case shows that Reed, speaking for himself and his associates, agreed with Campbell to take up to $100,000 purchase price of shares of stock of Campbell Transportation Co. which were to be acquired by Campbell from John W. Hubbard. By reason of financial difficulties encountered by Campbell in purchasing Hubbard’s 2,500 shares at a price of $600,000, the original plan contemplated had to be changed. What actually happened was that A. E. Dyke acquired 1,250 shares of Hubbard’s stock at a price of $300,000 and Campbell acquired a like number of shares at the same price, which he was required to turn in to the treasury of Campbell Transportation Co. as treasury stock in order to satisfy the Colonial Trust Co., which was advancing $300,000 for the purchase. In these circumstances it was impossible for Campbell to permit Reed tq acquire his shares immediately. An agreement existed between Dyke and Campbell under which Campbell was to acquire a part of the stock that Dyke purchased. It was these shares which Campbell was to acquire from Dyke that Campbell was to sell to Reed and his associates. The fact is clear, however, that the 1,250 shares of Campbell Transportation Co. stock which were purchased by Dyke and stood in his name were stock owned by Dyke until they were “lifted” from Dyke by Campbell. Quite clearly Dyke and Reed and his associates could not both be the owners of these shares of stock while they were held by Dyke. In order to keep his agreement with Reed to permit him and his associates to acquire some of Hubbard’s stock, Campbell, on March 28, 1940, caused his certificate for 1,250 shares which he had owned since some time in 1938 to be split up. He caused two 150 share certificates and two 50 share certificates to be issued in his name, which he immediately on March 28 turned over to Reed and his associates, and they on that date paid for the shares at the rate of $240 per share, plus interest which had accrued from March 6. When Campbell later acquired from Dyke some of Dyke’s shares they were turned over to Reed and his associates in place of the certificates then held by them. Up to March 28,1940, Reed and his associates simply had an execu-tory contract for the purchase from Campbell of shares of stock of the Transportation Co. Such executory contract did not amount to a contract of sale. It did not vest in Reed and his associates title to any of the shares of Campbell Transportation Co. We sustain the respondent’s contention that Reed and his associates did not acquire their shares prior to March 28, 1940. The petitioners sold their shares on September 10,1941. They therefore did not hold them for a period of 18 months. The respondent did not err in the determination of the deficiencies. Decisions will he entered for the respondent.