*Decision will be entered under Rule 50.*

NORTHPORT SHORES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.
MARTHA M. HALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 64500, 64501. Promulgated January 15, 1935.

*R. M. O'Hara, Esq.*, for the petitioners.
*R. W. Wilson, Esq.*, for the respondent.

### OPINION.

LEECH: These consolidated proceedings involve deficiencies in income tax, and alleged overpayment of such taxes for the calendar year 1929, as follows:

| Petitioner | Deficiency | Claimed over payment |
|---|---|---|
| Northport Shores, Inc | $24.75 | $7,625.74 |
| Martha M. Hall | 371.25 | 30,675.11 |

The issues framed by the pleadings have been limited by petitioners' withdrawal of assignments of error to (1) the amount received by petitioner, Martha M. Hall, in 1929 on retirement of certain shares of the capital stock of petitioner, Northport Shores, Inc., and (2) the cost basis to petitioners of certain property, hereinafter sometimes called the Hall property, exchanged by petitioner, Martha M. Hall, in 1927 for all the stock of petitioner, Northport Shores, Inc.

Petitioners offered no evidence on the first issue, and respondent is, therefore, sustained thereon.

In January 1910, Martha M. Hall, William Henry Hall, and Agnes Hall, brother and sister, respectively, of petitioner, Martha M. Hall, purchased certain unimproved real estate situate at Northport, Long Island, comprising 174.319 acres, and hereinafter called the Hall property, for $250,000. In this transaction petitioner, Martha M. Hall, and her sister, Agnes Hall, each acquired an undivided one-fourth interest, and their brother, William Henry Hall, acquired an undivided one-half interest. The cost to petitioner, Martha M. Hall, and the fair market value on March 1, 1913, of such one-fourth interest was $62,500. The property was continuously occupied as a residence by this petitioner until May 1927, when it was conveyed to Northport Shores, Inc., petitioner herein.

William Henry Hall died September 7, 1914, and his undivided one-half interest in the Hall property was purchased in April 1915 by petitioner, Martha M. Hall, and her sister, Agnes Hall, in equal proportions, for a total consideration of $90,500. The cost to this petitioner of this undivided one-fourth interest in the property was $45,250.

Agnes Hall died, testate, on January 5, 1925, and devised to petitioner, Martha M. Hall, all of her property, including her undivided one-half interest in the Hall property. This petitioner and James J. Morgan were appointed and qualified as coexecutors of the will of Agnes Hall.

For many years prior to January 5, 1925, this petitioner and the said James J. Morgan were cognizant of the fact that the Hall property had sand and gravel deposits of commercial value. This knowledge was the result of various factors. The previous owner of the property, one John Arthur, prior to 1910 had actually been engaged in the business of removing sand and gravel from the property and selling it for commercial purposes. The rails of the narrow gauge railroad used by Arthur in that work remained on the property at the time of its sale in 1927. Other sand and gravel properties in close proximity were in actual operation prior to 1925. Existence of sand and gravel was apparent from a surface examination of the property. This was particularly true in various places

thereon where the ground was rolling and where, after any severe storm had caused the washing away of ground on the hillside, the gravel deposits were exposed.

On May 5, 1926, this petitioner and James J. Morgan duly executed under oath and filed with the collector of internal revenue, for the decedent, the Federal estate tax return (Form 706). In this return the undivided one-half interest in the Hall property owned by Agnes Hall at her death was listed as having an assessed value for 1925, the year of decedent's death, of $124,000, and a fair market value at the time of decedent's death, January 5, 1925, of $112,500. which were to serve as a basis for the determination of the Federal estate tax due. These values were predicated wholly upon a certain written appraisement of one Henry Brady, filed simultaneously with the Federal estate tax return, appraising decedent's undivided one-half interest at $112,500, and the entire property at $250,000. Henry Brady was a reputable appraiser of properties in New York City. His appraisement in this instance was based largely on hearsay. His services were secured by one Rathheim, attorney for this petitioner, who was directing the settlement of the estate, and in whom she trusted. The Commissioner determined the fair market value of the undivided one-half interest in the Hall property so devised to petitioner, Martha M. Hall, as $125,000.

In May 1927, this petitioner caused the organization of the other petitioner herein, Northport Shores, Inc., and thereupon exchanged the Hall property for the entire capital stock thereof, consisting of 5,000 shares of preferred with a par value of $100 each, and 1,000 shares of common stock without par value. Within a few days after the issuance of this stock, petitioner, Hall, transferred 500 shares of the common stock to James J. Morgan, her business manager and coexecutor above named.

In October 1927, the petitioner, Northport Shores, Inc., agreed to sell the Hall property to the Goodwin-Gallagher Sand & Gravel Corporation for $1,000,000, for production of sand and gravel, at which time the purchaser made an initial payment of $10,000. When title passed, in March 1928, the Metropolitan Sand & Gravel Co., affiliate of Goodwin-Gallagher Sand & Gravel Corporation, became the purchaser. Because of a slight adjustment due to a survey of the acreage involved, the final consideration agreed upon was $984,-853.11. Under the terms of the sale, petitioner, Northport Shores, Inc., received during the year 1928 the sum of $309,853.11, and the balance of the consideration was split over subsequent years in annual payments of $50,000 each. Petitioner, Northport Shores, Inc., elected to report the profit on the sale of the property on the installment basis, as is provided in section 44 (b) of the Revenue Act of 1928.

During the taxable year 1929 petitioner, Northport Shores, Inc., received certain payments on account of the consideration for the property, and retired 500 shares of its capital stock in the hands of petitioner, Martha M. Hall.

In the individual income tax returns of petitioner, Martha M. Hall, for the calendar years 1928 and 1929, taxable gain upon the retirement of 350 shares and 500 shares, respectively, of the capital stock of petitioner, Northport Shores, Inc., was returned in the respective amounts of $76,844.50 and $60,760. The basis of cost for the property, used in the computation thereof, is not disclosed.

In the corporate income tax returns of petitioner, Northport Shores, Inc., for the years 1928 and 1929, taxable gain was included thereon representing profits on sale of the Hall property, in the computation of which a cost basis of $237,285.41 was used.

In determining the pending deficiencies upon income charged as received from these transactions, respondent used as the cost basis of the Hall property to the petitioner, Northport Shores, Inc., and its capital stock issued therefor, 500 shares of which were so retired, the amount of $232,750, representing the sum of $107,750, the cost to petitioner, Martha M. Hall, of the two one-fourth interests in the property purchased by her in 1910 and 1914 respectively, and $125,000, the alleged cost to her of the undivided one-half interest acquired by bequest from her sister, Agnes Hall, in 1925.

In the original petitions initiating the present proceedings, filed April 14, 1932, no error was assigned to the respondent's valuation of the undivided one-half interest in the Hall property acquired by petitioner, Martha M. Hall, by devise from her sister, Agnes Hall, in 1925. This assignment of error first appears in the amended petitions properly filed September 17, 1932, but in which no claim for overpayment of taxes appears. By permission of the Board second amended petitions by both petitioners were filed at the hearing February 26, 1934, in which both petitioners assign error in the determination by the Commissioner of a fair market value for the above mentioned undivided one-half interest in the property received by the petitioner, Martha M. Hall, by devise from her sister, Agnes Hall, in 1925, alleging therein the same had a fair market value on the date of death of Agnes Hall, January 5, 1925, of at least $500,000, and asking determination of overpayments in accordance therewith.

We find the respondent erred in failing to include as an item of cost of the two undivided one-fourth interests of the Hall property purchased, the sum of $3,914.35, the depreciated cost to petitioner, Martha M. Hall, of buildings erected on the property.

The single remaining inquiry is the fair market value of the undivided one-half interest in the Hall property at January 5, 1925,

when acquired by petitioner, Martha M. Hall, by devise. Revenue Act of 1928, sec. 113 (a) (5)[1].

Although respondent does not admit either the competency, weight, or soundness of petitioners' evidence of the disputed value of the property, received at the hearing, the burden of his argument is that petitioner, Martha M. Hall, is estopped from now claiming a higher value for the entire property than $250,000, and, *a fortiori*, $125,000 for the undivided one-half interest here directly involved, and that " the estoppel here asserted  *  *  *  against Martha M. Hall and James J. Morgan applies with equal force and effect " against Northport Shores, Inc., since its sole stockholders and officers were the two individuals named.

The pleaded estoppel is that petitioner, Martha M. Hall, and her coexecutor, James J. Morgan, knowing the fair market value of the property and the presently involved undivided one-half interest therein, at January 5, 1925, misrepresented these values to respondent in the estate tax return, to secure the benefit of lower estate taxes, and, that respondent relied upon that misrepresentation in fixing such value for estate tax purposes to his damage. Respondent cites only *Tide Water Oil Co.*, 29 B. T. A. 1208, and *Rock Island, Arkansas & Louisiana Railroad Co.* v. *United States*, 254 U. S. 141, neither of which, we think, helps his present position.

Unless petitioners are estopped, the determination of the questioned value at the basic date by the respondent for estate tax purposes is not conclusive but raises only a prima facie presumption of fact, and therefore is rebuttable by convincing evidence. *David Williams*, 15 B. T. A. 227; affd., 44 Fed. (2d) 467; *Anson Evans et al., Trustees*, 29 B. T. A. 710; *Stella H. McConnell*, 29 B. T. A. 32; *T. I. Hare Powel, Executor*, 10 B. T. A. 166.

Among the other elements essential to sustain the estoppel here pleaded is the fact that the respondent *relied* upon the representation of the petitioner, Martha M. Hall, and her coexecutor, James J. Morgan, in the estate tax return, and the appraisement of Henry Brady accompanying that return, upon which such representation was based. Corpus Juris, vol. 21, cases cited on pages 1126, 1127, and 1128.

---

[1] SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

(a) *Property acquired after February 28, 1913*.—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property ; except that—

*  *  *  *  *  *  *

(5) PROPERTY TRANSMITTED AT DEATH.—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent.  *  *  *

Mere lapse of time or acceptance of benefits will not sustain the plea. *Sugar Creek Coal & Mining Co.*, 31 B. T. A. 344; *Tide Water Oil Co.*, *supra*. Since estoppel is an affirmative defense, respondent must prove that all of its essential elements are present. *Helvering v. Brooklyn City R. Co.*, 72 Fed. (2d) 275; *James H. Torrens*, 31 B. T. A. 787; *Tide Water Oil Co.*, *supra; Ohio Brass Co.*, 17 B. T. A. 1199; *Standard Sanitary Manufacturing Co.* v. *Arrott*, 135 Fed. 750; *Southwestern Investment Co.*, 19 B. T. A. 30; *Central Market Street Co.*, 25 B. T. A. 499; *Summerfield Co.*, 29 B. T. A. 77.

Respondent offers no evidence except the estate tax return and accompanying appraisement above mentioned. He argues that the factual elements necessary to sustain his plea appear from the pleadings of record and a statement by counsel for the petitioner made at the hearing. This statement was:

I merely want the record to show now the fact that we concede that they (petitioners) had knowledge of all the facts and circumstances with respect to the property which they now have, except what further knowledge they may have gained from making subsequent inquiries; but I want the record also to show that we deny that the petitioner or her business manager, one James J. Morgan, were qualified, either through experience or otherwise, to make an accurate estimate of the fair market value, based on facts within their knowledge.

Petitioners' replies to the answers to the second amended petitions, which first pleaded estoppel, both deny that the Commissioner's determination of the fair market value of the Hall property at January 5, 1925, as $250,000 and that of the decedent's undivided one-half interest therein as $125,000 was based upon his acceptance of the statements of petitioner and James J. Morgan in their capacity as coexecutors.

Obviously neither the pleadings nor quoted statement constitute an admission that respondent relied to any extent upon either the estate tax return or the Henry Brady appraisement in determining the value of the Hall property, or the undivided interest therein of the decedent, Agnes Hall, for the purpose of determining that estate tax. Petitioners' replies above-mentioned very definitely joined issue with the respondent upon the existence of that fact.

Since the Revenue Act of 1918, respondent's regulations have required an investigation by the Internal Revenue Bureau of every estate tax return, and the determination of the estate tax liability upon the basis of that investigation—not upon the net amount of the estate as returned. Regulations 37, articles 79, 95; Regulations 63, articles 72, 79; Regulations 68 and 70, articles 67, 78. These regulations were in accordance with the statutes, which fix the basis of the tax as the "*value* of the net estate." Revenue Acts of 1918 and 1921, sec. 401; Revenue Acts of 1924 and 1926, sec. 301. To

sustain respondent's apparent contention, upon this record, would necessitate the repugnant presumption (cf. *The President, Directors and Company of the Bank of the United States* v. *Dandridge*, 25 U. S. 64) that respondent was derelict in his duty, prescribed by the cited statute and regulations, and determined the estate tax liability of the Agnes Hall estate, not upon the basis prescribed by the statute and regulations as applicable to all, but upon the declarations of petitioner, Martha M. Hall, and her coexecutor, James J. Morgan, and a mere appraisement submitted by *them*. Cf. *James Couzens*, 11 B. T. A. 1040; *Tide Water Oil Co., supra.*

Thus, without evidence, absent from the present record, the conclusion is warranted that the value of the Hall property, as determined by respondent as of the death of Agnes Hall, in fixing her estate tax, was the result of respondent's own judgment and not the result of any representation or misrepresentation, by act or otherwise, of the petitioner, Martha M. Hall, or her coexecutor, James J. Morgan. This would defeat the pleaded estoppel. *Mutual Life Insurance Co.* v. *Norris*, 31 N. J. Equity, 583; *West* v. *City of Houston* (Texas), 163 S. W. 679; *Mace* v. *Duffy*, 39 Wash. 597; 81 Pac. 1053.

At all events, respondent has not affirmatively established the fact, essential to his pleaded estoppel, that he relied upon any representation or misrepresentation of petitioner, Martha M. Hall, or her coexecutor, James J. Morgan, in determining the value of the Hall property or the presently involved undivided one-half interest therein, in the computation of the estate tax liability of the Agnes Hall estate.

Another requisite of estoppel is that the representation or misrepresentation to support it must be one of fact. This record apparently discloses nothing more than a mere expression of opinion of value which does not support the plea. *May Rogers, et al.*, 31 B. T. A. 994.

Consequently, without considering other possible defects, upon the present record, we find no estoppel.

Respondent suggests that failure of the record to disclose an offer by petitioners to pay the additional Agnes Hall estate taxes which would result from the present determination of any higher value for the Hall property at January 5, 1925, implies a fatal lack of bona fides by petitioners. It may be noted that the petitioners did not ask for the higher value, now asserted, and a consequent finding of overpayment, in their original petitions herein, filed some time after the statute of limitations on the estate tax had expired. Cf. Revenue Act of 1924, sec. 310 (a). But, in any event, we do not have that estate before us, nor do we have general equitable jurisdiction. Our

only present pertinent inquiry is the correct *income* tax liability of these petitioners for 1929. *Tide Water Oil Co.*, *supra; Ernest M. Bull, Executor*, 7 B. T. A. 993. The determination of the *fact* of the fair market value of the undivided one-half interest in the Hall property devised to petitioner, Martha M. Hall, at January 5, 1925, is material to that inquiry. Since we find no estoppel preventing petitioners from proving that fact, we pass to a consideration of the evidence upon that disputed question.

The Hall property was situated on the North Shore of Long Island at the base of a neck of land extending into Long Island Sound and almost completely bounded by that Sound, Huntington Bay, and Northport Bay. It had a water frontage of approximately 5,000 feet, of which about 60 percent was on the Sound, and 40 percent on Northport Bay. This fact increased its value as a sand and gravel property, as well as a residence property, on account of the feasibility of water transportation, which was cheaper than by land, and it could be operated more effectively by hydraulic means than similar properties inland. The desirable water front properties in the vicinity of the Hall property were held by wealthy people. Such ownership of similar properties in the neighborhood made the market therefor less than normally active until 1929 because prior thereto the owners infrequently offered their properties for sale. No comparable sand and gravel property was nearer the New York market than the Hall property. There was no change in the character of the neighborhood and no material difference in demand for, cost of producing, and selling prices in New York for sand and gravel, between January 1925 and 1927, in which latter year the Hall property was sold to the Goodwin-Gallagher Sand & Gravel Corporation.

The petitioners introduced the testimony of three witnesses. James J. Gallagher, associated with the Goodwin-Gallagher Sand & Gravel Corporation since its organization in 1913, was vice president of it when the Hall property was purchased, and participated in the negotiations preceding that purchase. He was familiar with that property when purchased and with the considerations entering into the price the company paid for it. He had bought some sand and gravel properties for the company before that time, and as vice president it was his duty to fix the prices which the company would pay for sand and gravel properties. The Goodwin-Gallagher Sand & Gravel Corporation was one of the four largest sand and gravel companies serving greater New York, and furnished more than one half the sand and gravel used in the metropolitan area of New York. That company was in the market for sand and gravel properties similar to and situated as the property in question, in 1925,

and would have paid $1,000,000 then for it. Gallagher testified that the Hall property in January 1925 had a fair market value as a sand and gravel property of about $1,000,000.

Edwin E. Thorp, engaged continuously in the real estate business as a broker since 1901, dealing in property in New York and vicinity, and as adviser in the sale of North Shore Long Island properties, gave the same opinion of value. He was a director of the Goodwin-Gallagher Sand & Gravel Corporation from about July 1925 until March 1933.

Louis DeLancey Ward, engaged as a real estate broker on Long Island since 1902, specializing in Shore properties and those similar to the Hall property for residential purposes, 90 percent of his business for the past 10 years having been Long Island properties, had sold, since 1924, 15,000 acres of Shore properties in Long Island similar to the Hall property. He valued the Hall property for residential purposes on January 5, 1925, at $5,000 per acre, or a total of $871,595. His opinion was based, to some extent at least, upon actual sales of smaller but otherwise comparable residential tracts in the vicinity. The market was higher in 1925 than in 1926 and 1927. He had tried to secure the right to sell the Hall property in 1925, and before, since he had several prospective purchasers for the Hall property during 1925 for the production of sand and gravel, but petitioner, Martha M. Hall, would not sell.

The testimony of none of these witnesses was weakened or discredited upon cross-examination. Gallagher and Ward, at least, were qualified in their respective fields.

In our opinion, petitioners have overcome any prima facie presumption of fair market value of the Hall property or the undivided one-half interest therein at January 5, 1925, and, on this record, have sustained their burden of proof in clearly and convincingly establishing those values at that date to have been $500,000 for the entire property and $250,000 for the undivided one-half interest therein. Cf. *David Williams, supra; Anson Evans et al., Trustees, supra; Stella H. McConnell, supra; T. I. Hare Powel, Executor, supra.* It follows that there is no deficiency against either petitioner, and their respective overpayments will be recomputed in accordance with this opinion.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SMITH dissents.