*Decision will be entered under Rule 50.*

ELIZABETH G. AUGUSTUS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96061. Promulgated December 20, 1939.

1202

*Carmi A. Thompson, Esq., Orville Smith, Esq., Joseph B. Shepler, Esq.,* and *Erwin N. Griswold, Esq.,* for the petitioner.
*Thos. F. Callahan, Esq.,* for the respondent.

OPINION.

LEECH: Respondent has determined deficiencies in income tax of $75,944.65 and $41,386.34 for the calendar years 1935 and 1936, respectively. The proceeding was submitted upon stipulations of fact under Rule 30 of the Board's Rules of Practice. In determining gain or loss upon disposition by petitioner of certain securities and property received by her from the estate of her father, respondent has used as a basis to petitioner their fair market value at the date of death of her father, whereas petitioner contends that such basis is the value of the property when distributed to her upon the termination of a trust created by her father's will. That controversy presents the first issue. A decision of this question, under the stipulation, will supply the basis for measuring the capital gain or loss to be recognized for tax purposes. A subsidiary issue is the fair market value, on the date of death of petitioner's mother, of certain stock acquired by petitioner from the latter's estate.

Petitioner is a resident of Waite Hill Village, Lake County, Ohio. On July 13, 1922, her father, Daniel Good, died testate, a resident of Buffalo, New York, leaving a widow, Sarah E. Good, and, as his only descendants, two daughters, Margaret Jane Good and this petitioner, named in the will as Frances Elizabeth Good. Daniel Good's last will and testament was duly admitted to probate in the Surrogate's Court of Erie County, New York. Item eleventh of this will is as follows:

ELEVENTH: — It is further my will and I hereby direct that after the payment of the legacies hereinbefore specified and also after my said executors shall have set aside the sum of Two Hundred thousand dollars ($200,000.) as herein specified, in trust for the lives of my two children, all the rest, residue and remainder of my estate, of every name and nature, I hereby direct my

executors, or the survivor of them, to divide into four equal parts and to dispose of the same as follows:

(1) To pay over one of each said parts to my said children, Frances Elizabeth Good and Margaret Jane Good, respectively, and to their heirs and assigns forever.

(2) The other one-half part of my said residuary estate I give, devise and bequeath to my executors in trust, to invest and re-invest the same in first-class, interest-bearing securities as hereinafter specified, and to pay over the interest and income thereof to my wife, Sarah Elizabeth Good, as long as she may live.

And it is further my will and I hereby direct my said trustees that in case my said wife shall so desire, she shall have the right and privilege of taking and appropriating to her own use so much of the principal of said sum as she may wish, in addition to the interest and income thereof, my intention being that my wife shall be the sole judge as to whether the interest and income of said part is sufficient for her needs, and in case she finds that said income is not sufficient, she shall have the right to use so much of the principal of said fund as she may desire, and only the residue of the principal of said fund so remaining at her death shall be disposed of as herein next provided.

(3) I hereby give to my said wife, and expressly invest her with power and authority to dispose of one-half of the balance of said fund so invested in trust for her by her last will and testament in such manner as to her may seem best; and the other one-half of the balance of said trust fund I hereby give, devise and bequeath to my legal heirs and assigns forever.

The decedent's widow, Sarah Elizabeth Good, was duly appointed as sole executrix and sole trustee under the will of Daniel Good and continued in such capacities until her death, the coexecutor and trustee named under item fourteenth of the will having predeceased the testator.

On November 9, 1928, Sarah E. Good died intestate, a resident of Buffalo, New York, and left surviving her as her only heirs at law and the only heirs at law of Daniel Good, their aforesaid two daughters, Margaret Jane Good and this petitioner. Sarah E. Good died without having exercised her rights under the will of Daniel Good to consume the principal of the trust fund or to dispose, by will, of one-half of the balance of the fund remaining at her death, as provided by item eleventh above set out.

Upon the death of Sarah E. Good, petitioner became entitled to receive, and did receive, certain securities from the trust fund as provided by the will of her father under item eleventh. The property of the Daniel Good testamentary trust, created under item eleventh, was not considered property belonging to the estate of Sarah E. Good, deceased, for Federal estate tax purposes.

In the year 1935, petitioner sold 2,525 shares of the common stock of the F. W. Woolworth Co. for a total sum of $149,203.99, which shares were not a part of the Daniel Good testamentary trust but were acquired by her from the intestate estate of her mother, Sarah E. Good. These shares were appraised as of November 9, 1938, for

Federal estate tax purposes, under the blockage theory, at $207,050 and the Federal estate tax liability of the estate of Sarah E. Good was determined on that basis. The value of such shares, based on market quotations and average sale prices on November 9, 1928, was $218,917.50.

In the year 1935, petitioner sold certain shares of common, stock of the F. W. Woolworth Co. and her interest in real estate situate in Canada, both of which were acquired by her under paragraphs (2) and (3) of item eleventh of the will of Daniel Good. The number of shares of stock sold, the price received, and the value of this stock on July 13, 1922, and on November 9, 1928, are stipulated, together with the value of the real estate in question, on the former date, which value petitioner contends was also its fair market value on November 9, 1928.

During 1936, petitioner sold certain shares of stock of the F. W. Woolworth Co., Standard Oil Co. of California, the Atchison, Topeka & Santa Fe Railroad Co., and Willys-Overland Co., and bonds of Westchester County, New York, all of which she had acquired under paragraphs (2) and (3) of item eleventh of the will of Daniel Good. The number of shares of each stock sold, in each instance, the price received on each sale, and the fair market value thereof on July 13, 1922, and November 9, 1928, are stipulated.

The correctness of the major portion of the deficiency for 1935 and all of that for 1936 depends upon the gain or loss on this sale of property which petitioner acquired under paragraphs (2) and (3) of item eleventh of the will of her father, Daniel Good.

Since sections 113 (a) (5) of the Revenue Acts of 1934 and 1936,[1] which sections are identical and are controlling here, provide that "the basis [to be used in this computation] shall be the fair market value of such property at the time of such acquisition", a decision of what is meant by "time of such acquisition", under the stipulation, will furnish the basis for determining the amount of capital gain or loss realized and the length of petitioner's holding of the property for the purpose of limiting the amount of that gain or loss which is

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(5) PROPERTY TRANSMITTED AT DEATH.—If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death. For the purpose of this paragraph property passing without full and adequate consideration under a general power of appointment exercised by will shall be deemed to be property passing from the individual exercising such power by bequest or devise.

to be recognized for tax purposes. Secs. 117, Revenue Acts of 1934 and 1936. See *McFeely* v. *Commissioner*, 296 U. S. 102.

As stated, in determining gain or loss on the sale of this property, respondent has used as the basis for computing gain or loss, the fair market value of this property on June 13, 1922, the date of Daniel Good's death. He construes "time of such acquisition" to mean the date of death of Daniel Good, the petitioner's testator. His position is that petitioner acquired a vested interest in this property upon the death of her father but that, irrespective of whether the interest was vested or contingent, "the time of such acquisition" of this property was the date of the death of the testator because petitioner unquestionably took title to such property under the provisions of the will or by intestacy and, therefore, "by bequest, devise, or inheritance." See Regulations 86, art. 113 (a) (5)–1 (*b*).

Petitioner contends that the "time of such acquisition" denotes the time when her interest in the property she sold became vested. She then argues that, under the law of New York, which is controlling here, she acquired only a contingent interest in that property at her father's death, under his will, which did not vest until her mother's death and the termination of the testamentary trust created by her father.

It is apparently not doubted, and no doubt exists, we think, that petitioner acquired all the property in question "by bequest, devise, or inheritance" from her father. Moreover, in considering the meaning of the disputed phrase, it is apparent and noteworthy that, since the pertinent statutory provisions have to do only with the basis which shall be used in determining gain or loss on the disposition of the property thus acquired, it is wholly immaterial whether the petitioner's interest in the property disposed of was contingent at the death of the testator, to become vested upon the occurrence of a condition subsequent, or was vested at the testator's death, subject to divestiture upon the happening of such a condition. The first has happened or the latter failed before the taxable disposition occurs. Thus, the significance of any differences, practical, legalistic or otherwise, between contingent and vested estates, has disappeared before the pertinent statutory provision can come into play.

However, the decision of the issue turns directly upon the meaning Congress intended to convey by its use of the words "time of such acquisition" in sections 113 (a) (5) of the Revenue Acts of 1934 and 1936.

Although this provision is similar to that included in all the revenue acts prior to those of 1928 and 1932,[2] we are concerned here only with the Congressional meaning of the disputed expression

---

[2] Revenue Act of 1921, sec. 202 (a) (3) ; Revenue Act of 1924, sec. 204 (a) (5) ; Revenue Act of 1926, sec. 204 (a) (5). See *Brewster* v. *Gage*, 280 U. S. 327.

when used in the Revenue Acts of 1934 and 1936. Cf. *Helvering* v. *Wilshire Oil Co.*, 308 U. S. 90.

In construing this statute, as any other, of course, extrinsic aids, including the legislative history of the statute and the Congressional Committee Reports, are relevant only if the meaning of the statute is ambiguous. *Helvering* v. *Morgan's, Inc.*, 293 U. S. 121; *McFeely* v. *Commissioner, supra.*

That ambiguity in the proper meaning to be attributed to the phrase under discussion existed when it, or a similar expression, was used in the revenue acts preceding those for 1928 and 1932, is clearly established by the large volume of litigation which arose over the construction of that phrase in the earlier acts. See, among other cases, *Roebling* v. *Commissioner*, 78 Fed. (2d) 444; *Commissioner* v. *Igleheart Trust Estate*, 75 Fed. (2d) 151; *Warner* v. *Commissioner*, 72 Fed. (2d) 225; certiorari denied, 293 U. S. 620; *Pringle* v. *Commissioner*, 64 Fed. (2d) 863; certiorari denied, 290 U. S. 656; *Brewster* v. *Gage*, 25 Fed. (2d) 915; *Grace L. Wright*, 29 B. T. A. 1033; *Harry C. Kayser*, 27 B. T. A. 816; *Melville A. Stern, Executor*, 22 B. T. A. 1319; *Rodman E. Griscom*, 22 B. T. A. 979; *Central Trust Co., Executor*, 19 B. T. A. 867; *Maude Enella Brickell*, 17 B. T. A. 711; *Elizabeth W. Boykin*, 16 B. T. A. 477; *Louis Kalb*, 15 B. T. A. 886; *F. W. Matthiessen, Jr.*, 2 B. T. A. 921. The very fundamental change from the earlier acts, enacted in sections 113 (a) (5) of the Revenue Acts of 1928 and 1932 (see *Lane* v. *Corwin*, 63 Fed. (2d) 767), "was made because there was some doubt as to the meaning of the term 'date of acquisition', which was the term used under the Revenue Act of 1926." Report of Ways & Means Committee, 73d Cong., 2d sess., H. Rept. 704. See also discussion in *McFeely* v. *Commissioner, supra.*

The courts and the Board have construed "date [or time] of such acquisition", as used in the revenue acts preceding the Act of 1928, in the sections comparable to those presently controlling. Likewise, the meaning of the word "acquired", in sections 113 (a) (5) of the Revenue Acts of 1928 and 1932,[3] has been interpreted.

---

[3] SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

\* \* \* \* \* \* \*

(5) PROPERTY TRANSMITTED AT DEATH.—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death.

But these cases are not impressive here, since they have to do with revenue acts other than those of 1934 and 1936. Moreover, the cases which considered the meaning of "acquired" in the Revenue Acts of 1928 and 1932 are not in point here for another reason. The basic question in those cases was not as to the date or time of acquisition of property but was whether the property, if personal, was acquired by *specific bequest* and, if real, by general or specific devise or by intestacy. Upon the answer to those questions the act, itself, expressly fixed whether the basis on disposition of the property should be its value at the date of death of the decedent or the date of distribution of the property. Those cases are important, if at all here, in showing the purpose Congress had in making the changes appearing in the pertinent provisions of the Revenue Acts of 1934 and 1936, which re-enacted section 113 (a) (5) as it had appeared in the acts prior to those of 1928 and 1932. The decisions of the courts in the cases arising under these latter acts had disclosed that, under section 113 (a) (5), as there appearing, where property passed by a bequest or devise of a contingent remainder, all increase in the value of the property between the date of death of the decedent and the date of the ultimate distribution, escaped tax altogether. Congress desired to correct that situation. In the meantime, the Supreme Court had decided *Brewster* v. *Gage* (280 U. S. 327), on January 6, 1930. Congress believed that the Supreme Court there determined finally that the "time of such acquisition" of all property acquired "by bequest, devise, or inheritance" was the date of death of the decedent. Acting under that belief—the soundness of which is immaterial here—Congress adopted the Revenue Act of 1934. This seems to be conclusively established by the Report of the Ways & Means Committee accompanying the Revenue Act of 1934, explaining the pertinent change in that act. That report, in part, reads:

Section 113 (a) (5) of the Revenue Act of 1932 is a reenactment of a similar provision contained in the 1928 act. The change in the 1928 act was made because there was some doubt as to the meaning of the term "date of acquisition", which was the term used under the Revenue Act of 1926. Since the 1928 act was passed, the Supreme Court has defined "the date of acquisition" to mean the date of death in the case of all property passing by bequest, devise, and inheritance, whether real or personal. (*Brewster* v. *Gage*, 280 U. S. 327.) Section 113 (a) (5) of the bill conforms to the language contained in the Revenue Act of 1926, so that a uniform basis rule may be required in the case of property passing at death, whether real or personal. The section also includes a provision relating to general powers of appointment exercised by will, which was explained in connection with section 113 (a) (4).

See also Report of the Senate Finance Committee, 73d Cong., 2d sess., Senate Report 558.

Undoubtedly therefore, we think, "time of such acquisition", as used in sections 113 (a) (5) of the Revenue Acts of 1934 and 1936,

**1208**

means the date of death of the decedent as to all property acquired from the decedent "by bequest, devise, or inheritance", regardless of whether the title to the property thus acquired as of the date of death of decedent was contingent or vested. The respondent is affirmed on this issue.

There remains only the issue with respect to the stock acquired by petitioner from the estate of her mother and sold in 1935. It is stipulated that in determining the estate tax liability of the estate of petitioner's mother, the estate holdings of the F. W. Woolworth Co. stock were valued by application of the blockage rule at an amount equivalent to $82 a share, whereas the average selling price of this stock from sales made on the New York Stock Exchange on the critical date was $86.70 per share. Respondent contends that the valuation, at which the stock was appraised, for estate tax purposes, in the estate of petitioner's mother, and upon which value that tax was paid, must be held to be correct, as against this petitioner, and as establishing the fair market value here of the stock received by petitioner from that estate. Petitioner argues that the determination of value for purposes of estate tax does not conclusively establish fair market value, and that her gain or loss, upon sale of the stock, must be computed upon the basis of actual fair market value on the date of her mother's death, if it is established that value be different from the value at which the stock was included for estate tax purposes.

We agree with petitioner. *Anson Evans et al., Trustees*, 29 B. T. A. 710; *Northport Shores, Inc.*, 31 B. T. A. 1013; *Lillian G. McEwan*, 26 B. T. A. 726; *May Rogers*, 31 B. T. A. 994; affd., 107 Fed. (2d) 394.

Whether the petitioner has established that value is a question of fact. No evidence supporting the application of the blockage rule appears in the record. However, the facts stipulated disclose that the volume of trading in this particular stock at or about the date of death of petitioner's mother was not only very large, compared with the block of stock to be valued, but that the price trend was upward. In our judgment, this record thus overcomes the presumption of correctness attaching to respondent's determination of basis. We find that on November 9, 1928, the fair market value of the 2,525 shares of stock sold by petitioner in 1935 was $86.70 per share. See *John J. Newberry*, 39 B. T. A. 1123.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

———

BLACK, dissenting: It is petitioner's contention in this proceeding that the interest which she received in the property conveyed by her father's will to a testamentary trust was a contingent remainder and

that this interest in such property did not become vested until the date of the death of her mother, November 9, 1928.

The law of New York controls the question. *Forbes* v. *Commissioner*, 82 Fed. (2d) 204. Under the laws of the State of New York, I think petitioner had only a contingent remainder under the terms of the testamentary trust. Under the will of petitioner's father, petitioner's mother, the life tenant, had not only the right to the income from the property, but also the right to take for her own use so much of the principal as she might wish or desire, she being the sole judge as to whether she should consume the principal. By the terms of the will it was only the residue of the principal of the fund so remaining in the testamentary trust at her death which was to be disposed of by the trustee to the remaindermen. The remainder thus created was contingent and not vested. See *In Matter of Dinkel*, 133 Misc. 868; 234 N. Y. S. 97; *Matter of Nugent*, 142 Misc. 594; 255 N. Y. S. 236; *Matter of Bonner*, 157 Misc. 810; 285 N. Y. S. 283; *Louis Kalb*, 15 B. T. A. 886.

If, under the testamentary trust involved in this proceeding, the remainder interest of petitioner was contingent, petitioner did not "acquire" the property within the meaning of section 113 (a) (5) of the Revenue Acts of 1934 and 1936 until the death of the life tenant. *Lane* v. *Corwin*, 63 Fed. (2d) 767; *Pringle* v. *Commissioner*, 64 Fed. (2d) 863; *Forbes* v. *Commissioner, supra; Louis Kalb, supra.*

The language of section 113 (a) (5) of the Revenue Acts of 1934 and 1936 is precisely the same as the language of a similar section in the 1926 Act and prior acts. Although this is true, the majority opinion construes the language of section 113 (a) (5) of the Revenue Acts of 1934 and 1936 to fix the date of "acquisition" as the same whether the remainder interest is vested or contingent.

This construction given by the majority opinion seems to rest largely upon reports of the House Ways and Means Committee and the Senate Finance Committee, which accompanied the bill which became the Revenue Act of 1934. It seems to me that the reports to which the majority opinion refer went no further than to make plain that the purpose of the language was to adopt the construction which the Supreme Court of the United States had put upon similar language in *Brewster* v. *Gage*. I think that the court in *Pringle* v. *Commissioner, supra*, makes clear that *Brewster* v. *Gage* did not decide the question we have in the instant case. There the court (Ninth Circuit) said, among other things:

The cases of *Brewster* v. *Gage*, 280 U. S. 327 and *Chandler* v. *Field*, 63 Fed. (2d) 13, are not controlling here. In each of those cases the interest of the taxpayer became vested immediately upon the death of the testator.

To the same effect, I think, is *Lane* v. *Corwin*, *supra*, although it involved a different statute.

Under the authorities I have cited, I think the date of petitioner's acquisition of the property in question was the date of the death of her mother, November 9, 1928, which terminated the testamentary trust and vested the property in petitioner, and not the date of the death of her father, July 13, 1922.

For the reasons I have stated, I respectfully dissent from the majority opinion.

ARUNDELL, VAN FOSSAN, MURDOCK, and DISNEY agree with this dissent.