LAURENCE D. JONES AND OLGA JONES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3026–72.   Filed October 23, 1973.

*Thomas D. Roberts*, for the petitioners.
*Joyce Elaine Britt* and *Peter D. Bakutes*, for the respondent.

#### OPINION

RAUM, *Judge:* The Commissioner determined a $40,435 deficiency in petitioners' 1969 income tax. The sole remaining issue involves ascertainment of the basis of certain shares of stock received by petitioner Olga Jones in 1953 out of the remainder of a trust that had been created in 1915. The outcome depends upon whether the "time of * * * acquisition" of the shares, under section 1015(c), I.R.C. 1954 (relating to transfers in trust before January 1, 1921), was in 1915 or 1953. The facts have been stipulated.

Petitioners filed a joint Federal income tax return for the calendar year 1969 with the Internal Revenue Service Center at Ogden, Utah, and resided in Lafayette, Calif., at the time of the filing of their petition herein.

On or after May 20, 1953, Olga Jones (petitioner) received certain shares of stock from a trust that had been created in 1915 by one Frank Pauson. By an instrument executed in California on December 8, 1915, Pauson, a California resident, had declared his intention that 20 shares of stock in Frank Pauson & Sons (a California corporation) be held

for the use and benefit of his daughter Olga Wilson. The trust instrument, which did not purport to be revocable, directed the trustees to distribute dividends declared on the 20 shares to the beneficiary or beneficiaries in a manner prescribed therein and ultimately to dispose of the corpus itself as follows:

Upon the youngest surviving child of OLGA WILSON reaching the age of twenty-five (25) years, and upon the death of OLGA WILSON, if she shall live until her youngest surviving child shall reach the age of twenty-five (25) years, the said shares shall be distributed amongst the then surviving children of said OLGA WILSON, share and share alike. Provided, however, that if any of the children of said OLGA WILSON shall die leaving issue, the share of such child shall be divided amongst his or her children share and share alike.

Pauson died on November 26, 1916. At the time he had executed the trust instrument, Olga Wilson had two living sons, Frank and Charles Wilson. In 1936 Frank Wilson married Frances Smith, and petitioner, born August 11, 1938, was the sole issue of that marriage. On September 28, 1944, following the death of petitioner's father on May 9, 1944, petitioner was adopted by Olga Wilson pursuant to a decree of a California court.

Olga Wilson died on April 26, 1953. She was survived by her son Charles, who was then over the age of 25 years, and by petitioner, her grandchild and adopted daughter, who was then 14 years old. A California court appointed a guardian for petitioner on May 18, 1953.

On May 20, 1953, petitioner's guardian and Charles Wilson and the sole surviving trustee of the Pauson trust entered into a written agreement pursuant to which the trust was terminated and the 20 shares of stock representing its corpus were transferred, 10 shares apiece, to Charles and petitioner (through her guardian). After petitioner's marriage to one J. W. Davis on August 26, 1953, her guardianship was terminated and the 10 shares of Pauson stock held by her former guardian were delivered to her outright and registered in her name. Dividends declared on those shares after the execution of the May 20, 1953, agreement were paid to petitioner's guardian until the time of her marriage and the termination of her guardianship and directly to petitioner thereafter.

Charles Wilson repudiated the May 20, 1953, agreement on January 29, 1959, and commenced an action in a California court to recover the 10 shares of Pauson stock then held by petitioner. The court announced its decision against the plaintiff on October 4, 1960.

In 1969, Frank Pauson & Sons was liquidated, and in return for her 10 shares of stock petitioner received assets having a fair market

value of $335,292 [1] as of the date of liquidation. On their 1969 income tax return, petitioners reported a long-term capital gain from that transaction in the amount of $166,954. The basis of the Pauson stock used in computing the gain ($188,338) was the value of the shares as of May 20, 1953 ($180,808), plus the amount petitioner had incurred and paid in the defense of her rights under the agreement of that date ($7,530). The 1969 tax return stated the date of acquisition of the stock to be June 1953. The Commissioner determined that the basis of the stock was only $43,803 and that petitioner had therefore realized a long-term capital gain of $311,489 upon its disposition. The basis figure used by the Commissioner was the value of the shares as of December 8, 1915 ($36,273), plus $7,530. Only the date as of which basis must be determined is in controversy; the parties have stipulated to the correctness of the basis figure used in respect of each date.

There is no dispute between the parties that petitioner's basis in her 10 shares of Pauson stock must consist of two elements: (1) an amount to be determined under section 1015 of the 1954 Code, which relates to the "Basis of Property Acquired by Gifts and Transfers in Trust"; plus (2) the amount she incurred and paid in defense of her rights under the agreement of May 20, 1953 ($7,530). There is no controversy as to the second component, and the parties are further in agreement that the relevant provisions of section 1015 in respect of the first component are those of subsection (c), which provides as follows:

SEC. 1015. BASIS OF PROPERTY ACQUIRED BY GIFTS AND TRANSFERS IN TRUST.

(c) GIFT OR TRANSFER IN TRUST BEFORE JANUARY 1, 1921.—If the property was acquired by gift or transfer in trust on or before December 31, 1920, the basis shall be the fair market value of such property at the time of such acquisition.

The issue between the parties under section 1015(c) involves the "time of * * * acquisition" of the Pauson stock. Petitioner argues that under California law and the terms of the 1915 trust instrument, her remainder interest in 10 shares of Pauson stock was contingent upon her surviving Olga Wilson and attaining the age of 25, that she first acquired a vested interest in the stock upon the execution of the agreement of May 20, 1953, that the "time of * * * acquisition" in section 1015(c) refers to the moment when the ultimate beneficiary of a gift or transfer in trust first acquires a vested interest in the transferred

[1] Petitioners' 1969 tax return indicates that the value of the assets acquired by petitioner in exchange for the Pauson stock was $355,292 rather than the stipulated amount of $335,292. The Commissioner's deficiency determination was based upon a computation using the larger figure, but petitioners alleged in their petition that the assets were "worth $335,292.00" and the Commissioner has admitted the correctness of that allegation in his answer. He has also submitted a proposed finding in which the relevant figure is stated to be $335,292.

property,[2] and that the first component of her basis therefore must be the value of the shares as of May 20, 1953 ($180,808). The Commissioner maintains that the "time of * * * acquisition" was December 8, 1915, when the various interests in the trust were created and when the shares were transferred to the trust, that the time of vesting of petitioner's rights in the stock is irrelevant under the statute, and that the first component of petitioner's basis is the value of the stock on December 8, 1915 ($36,273). We hold that the Commissioner is correct.

Section 1015 (c) may be read to support the view of either party, for the statute fails to make clear precisely what is meant by "acquisition" of property transferred in trust. There is obvious force to petitioner's suggestion that "time of * * * acquisition" refers to the moment when a remainderman's interest in the corpus first vests, but the phrase is equally susceptible of a construction making relevant the time of acquisition by a *trustee*, with the simultaneous creation of *some* interest in the ultimate taker who may or may not be ascertainable at that time. The legislative history of the statute convinces us, however, that the latter interpretation was the one intended.

Rules explicitly governing the basis of property acquired by inter vivos transfers in trust first appeared in section 204 of the Revenue Act of 1924, ch. 234, 43 Stat. 253, 258. The 1924 trust provisions were coordinated with rules covering the basis of property acquired by gift (see H. Rept. No. 179, 68th Cong., 1st Sess., p. 16 (1924) ; S. Rept. No. 398, 68th Cong., 1st Sess., p. 17 (1924) ), which had been introduced by section 202(a) (2) of the Revenue Act of 1921, ch. 136, 42 Stat. 227, 229. The 1921 legislation had created the distinction, still called for by section 1015 of the 1954 Code, between property acquired by gift after December 31, 1920 (which was to have the same basis as it had in the hands of the donor), and on or before December 31, 1920 (which was to have a basis equal to the value of the property at the "time of * * * acquisition"). The reason for the adoption of the post-1920 carryover rule was to correct an administrative interpretation of prior law [3] holding that the basis of property acquired by gift was its value at the time of its acquisition,[4] which Congress saw in 1921 as "the source of

---

[2] Neither party has taken the position that if the Pauson stock was acquired in 1953, as petitioner contends, its basis must be determined pursuant to sec. 1015(b), which provides for a basis geared to the grantor's basis in the case of "property * * * acquired after December 31, 1920, by a transfer in trust."

[3] Earlier tax statutes had provided that the value of, but not the income from, property acquired by gift would be exempt from the income tax. See sec. II.B. of the Tariff Act of October 3, 1913, ch. 16, 38 Stat. 114, 167 ; sec. 4 of the Revenue Act of 1916, ch. 463, 39 Stat. 756, 758 ; sec. 213(b)(3) of the Revenue Act of 1918, ch. 18, 40 Stat. 1057, 1065 ; cf. *Rice* v. *Eisner,* 16 F. 2d 358, 359–360 (C.A. 2), certiorari denied 273 U.S. 764. Sec. 202(a)(2) of the 1918 Act, 40 Stat. at 1060, had also provided that property acquired on or after Mar. 1, 1913, was to have a basis equal to its "cost." See *Brewster* v. *Gage,* 280 U.S. 327, 333.

[4] See art. 1562, Regs. 45 (1920), promulgated under the Revenue Act of 1918.

serious evasion and abuse" when appreciated property was donated. H. Rept. No. 350, 67th Cong., 1st Sess., p. 9 (1921); S. Rept. No. 275, 67th Cong., 1st Sess., pp. 10–11 (1921).

The Revenue Act of 1924 merely applied the gift basis rules of the 1921 statute to inter vivos transfers in trust as well as gifts (although provision was made for adjustments in basis to reflect gain or loss recognized by a grantor in respect of property acquired after December 31, 1920, by a transfer in trust). The language of section 204(a)(4) of the 1924 Act is identical to that of section 1015(c) of the 1954 Code, and it has appeared thus unaltered in intervening revenue acts [5] as well as in section 113(a)(4) of the Internal Revenue Code of 1939. Plainly, by enacting a carryover basis rule for property acquired after 1920 by transfer in trust, Congress was endeavoring to avoid the same "abuse," namely, nonrecognition to either transferor or transferee of unrealized appreciation in the hands of the transferor, that it had sought to eliminate in 1921 in respect of gifts. And while the language of sections 204(a)(4) of the 1924 Act and 1015(c) of the current Code may be susceptible of either an interpretation making the date of acquisition of property by the remainderman of a trust the critical time for ascertaining the basis, or of one making the date of acquisition by the trustee, on the remainderman's behalf, the relevant time for such a determination, to construe those provisions in the first suggested manner would create the possibility for nearly the same kind of abuse that Congress throught it had eradicated in 1921, that is, vast untaxed appreciation of the value of property. In the absence of a statute calling far more clearly for a result so entirely inconsistent with its obvious purpose than does section 1015(c), we see no justification for giving that section the reading requested by petitioner.

Indeed, it is plain from the structure of paragraphs (a), (b), and (c) of section 1015 that no other result is reasonably possible. These three paragraphs were obviously intended in the aggregate to deal comprehensively with the basis of all property acquired by inter vivos gift, whether made outright or by means of a trust, and fixed January 1, 1921, as the point from which the basis of property thus transferred was to be measured by reference to the donor's basis. These provisions also preserved prior law whereby basis was determined by reference to value of the property at the date of acquisition in the case of gifts made before January 1, 1921, when the basic change in the statute

---

[5] Sec. 204(a)(4) of the Revenue Act of 1926, ch. 27, 44 Stat. 9, 14; sec. 113(a)(4) of the Revenue Act of 1928, ch. 852, 45 Stat. 791, 819; sec. 113(a)(4) of the Revenue Act of 1932, ch. 209, 47 Stat. 169, 199; sec. 113(a)(4) of the Revenue Act of 1934, ch. 277, 48 Stat. 680, 706; sec. 113(a)(4) of the Revenue Act of 1936, ch. 690, 49 Stat. 1648, 1682; sec. 113(a)(4) of the Revenue Act of 1938, ch. 289, 52 Stat. 447, 490.

first took effect. There certainly does not appear to be any legislative purpose to exempt from tax any enhancement in value occurring after December 31, 1920, and every indication in the legislative history would appear to point in the opposite direction. The most reasonable interpretation of the statutory provisions in the case of a pre-1921 gift in trust is to treat the date of the gift to the trustee as the date of "acquisition."

The same conclusions as to the proper construction of the provisions of section 1015(c) were reached after a careful analysis in *Richard Archbold*, 40 B.T.A. 1238, 1240. It was there held that the word "acquisition" in identical predecessor provisions of section 1015(c) (section 113(a)(4) of the Revenue Act of 1932) did not depend for its meaning upon "common law refinements of vested and contingent interests" and that as "to property received in distribution which the trustee had acquired by the original transfer by the settlor, the basis is value at the time of the original transfer." [6]

The *Archbold* case alone would control the result herein without persuasive reasons for its reexamination, but the per curiam affirmance of that case, 115 F. 2d 1005 (C.A. 2), certiorari denied 313 U.S. 584, on the authority of *Van Vranken* v. *Helvering*, 115 F. 2d 709 (C.A. 2), affirming 40 B.T.A. 956, certiorari denied 313 U.S. 585, even more strongly reinforces our view of section 1015(c). Both cases were decided on the same day by the same panel (Judges L. Hand, Swan, and A. N. Hand) of the Second Circuit. In *Van Vranken* the court was dealing with section 113(a)(5) of the Revenue Act of 1934, which set forth the basis rules for property acquired by bequest, devise, or inheritance. The issue was whether a remainderman's basis in property acquired out of a *testamentary* trust was to be measured at the time of the testator's death or at the time of the death of the person having the prior life interest, and the operative language in section 113(a)(5) was "time of * * * acquisition," a phrase which had made its first appearance in the basis provisions relating to testamentary dispositions in the same section of the same statute (section 202(a) of the Revenue Act of 1921) that had first used the identical language in respect of inter vivos gifts. The court held that the "time of * * * acquisition" was the date of the testator's death, i. e., the time of the transfer in trust, and that it was immaterial that the remainderman's interest may have been only contingent at such time. That view of section 113(a) (5) of the 1934 Act, as embodied in a Treasury regulation, was adopted by the Supreme Court in *Helvering* v. *Reynolds*, 313 U.S. 428, 434. The Supreme Court's decision in *Reynolds* is particularly signifi-

---

[6] Cf. *Carl O. Moore*, 20 T.C.M. 1083, 1094.

cant here because in explaining the reason for granting certiorari in that case, it noted explicitly that the Fourth Circuit's decision therein, which it reversed, was in conflict with four other cases, including *Archbold* and *Van Vranken*, 313 U.S. at 430, fn. 1. Also, the same result finally reached in *Reynolds* has been followed in cases involving comparable provisions of subsequent revenue measures: *Augustus* v. *Commissioner*, 118 F. 2d 38, 43 (C.A. 6), affirming 40 B.T.A. 1201, certiorari denied 313 U.S. 585 (construing sections 113(a)(5) of the Revenue Acts of 1934 and 1936); *Brandeis* v. *United States*, 251 F. 2d 719, 722–723 (C.A. 8) (construing section 113(a)(5) of the 1939 Code); *Haywood* v. *Gill*, 313 F. 2d 454, 457 (C.A. 4) (construing section 113(a)(5) of the 1939 Code); *Malcolm Clifton Davenport*, 6 T.C. 62, 65 (construing section 113(a)(5) of the 1939 Code).[7]

Petitioner has suggested no persuasive reason why the Court of Appeals in *Archbold* may have erred in holding that "time of * * * acquisition" had the same meaning in the context of the provisions governing the basis of property acquired by inter vivos transfers in trust as it had in the context of the provisions relating to testamentary trusts. But any lingering doubts as to the proper meaning of the phrase as it now appears in section 1015(c) must be dispelled by section 1.1015–3(a) of the Income Tax Regulations, which provides that property acquired by transfer in trust before January 1, 1921, shall have a basis equal to its fair market value "at the time of * * * the transfer in trust." These regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and * * * should not be overruled except for weighty reasons," *Commissioner* v. *South Texas Co.*, 333 U.S. 496, 501; see also *Bingler* v. *Johnson*, 394 U.S. 741, 749–750; *Colgate Co.* v. *United States*, 320 U.S. 422, 426; *Fawcus Machine Co.* v. *United States*, 282 U.S. 375, 378; *Brewster* v. *Gage*, 280 U.S. 327, 336; *Textile Mills Corp.* v. *Commissioner*, 314 U.S. 326, 336–339; *Boske* v. *Comingore*, 177 U.S. 459, 470; *Regal, Inc.*, 53 T.C. 261, 263–264, affirmed per curiam 435 F. 2d 922 (C.A. 2); *William F. Sanford*, 50 T.C. 823, 832, affirmed 412 F. 2d 201 (C.A. 2), certiorari denied 396 U.S. 841; cf. *United States* v.

---

[7] The rule of these cases is now codified in sec. 1014(a) of the 1954 Code.

*Forbes* v. *Commissioner*, 82 F. 2d 204 (C.A. 1), reversing 32 B.T.A. 139, relied upon by petitioner herein, had indicated that the "time of * * * acquisition" of property acquired by a remainderman of an inter vivos trust depended upon the time at which the remainder interest became vested. *Forbes* was relied upon in the dissenting opinion to *Richard Archbold*, 40 B.T.A. 1238, 1241, and *Elizabeth G. Augustus*, 40 B.T.A. 1201, 1209, cases in the Board of Tax Appeals, and in the decision of the Court of Appeals in *Reynolds* v. *Commissioner*, 114 F. 2d 804, 807 (C.A. 4), reversing 41 B.T.A. 59, which was reversed by the Supreme Court. Insofar as *Forbes* stands for the proposition that the "vested" or "contingent" nature of a remainder interest is relevant to ascertainment of the "time of * * * acquisition," it must be regarded as inconsistent with subsequent decisions, particularly that of the Supreme Court in *Reynolds*.

*Correll*, 389 U.S. 299, 307. The regulations here in issue are well designed to serve the legislative purpose, the construction they put upon the statute is a defensible one, and we see no reasons, much less weighty ones, for them to be disapproved. Indeed, these regulations must be regarded with unusual deference, for they have not been substantially amended since their original promulgation in 1935 as article 113(a)(4)–1(b) of Regs. 86,[8] and may be deemed to have received tacit congressional approval by reenactments [9] of the statute they interpret. See *United States* v. *Correll*, 389 U.S. 299, 305–306; *Brewster* v. *Gage*, 280 U.S. 327, 337.[10]

We hold that section 1.1015–3(a) of the regulations is valid and that the basis of the stock petitioner received out of the remainder of the 1915 trust must be measured by the value of the shares at the time of the original transfer in trust.

*Decision will be entered under Rule 50.*

---

[8] These regulations have subsequently appeared as art. 113(a)(4)–1(b) of Regs. 94 (1936); art. 113(a)(4)–1(b) of Regs. 101 (1939); sec. 19.113(a)(4)–1(b) of Regs. 103 (1940); sec. 29.113(a)(4)–1(b) of Regs. 111 (1943); sec. 39.113(a)(4)–1(b) of Regs. 118 (1953); and sec. 1.1015–3(a) of the regulations under the 1954 Code.

[9] See fn. 5 *supra*.

[10] Contrary to petitioner's assertion, the 1935 regulations were not at all inconsistent with prior regulations, which had merely tracked the language of the statute in providing that the basis of property acquired by gift (or, after the Revenue Act of 1924, by a transfer in trust) on or before Dec. 31, 1920, was to be the fair market value "of such property at the time of acquisition." Art. 1563 of Regs. 62 (1922); art. 1594 of Regs. 65 (1924); art. 1594 of Regs. 69 (1926); art. 595(a) of Regs. 74 (1931); art. 595(a) of Regs. 77 (1933). The 1935 regulations, to be sure, may have been inconsistent to some extent with the approach taken in certain early administrative rulings, relied upon by petitioner, which were of lesser consequence than regulations (S.M. 3781, IV–2 C.B. 21 (1925); O.D. 1136, 5 C.B. 56 (1921), declared obsolete by Rev. Rul. 69–31, 1969–1 C.B. 307, 309), but it is well-settled that the Commissioner may correct mistakes of law made in such lesser rulings, cf. *Dixon* v. *United States,* 381 U.S. 68, 72–73, and indeed is not precluded from changing the regulations themselves, cf. *Helvering* v. *Wilshire Oil Co.,* 308 U.S. 90, rehearing denied 308 U.S. 638.